156 Cal.App.2d 652 (1958)
EARL L. IVY, Appellant,
v.
PACIFIC AUTOMOBILE INSURANCE COMPANY et al., Respondents.
Civ. No. 17431. 
California Court of Appeals. First Dist., Div. One. 
Jan. 13, 1958.
 Mullally & Wines and William E. Geary for Appellant.
 Boyd & Taylor and Frederic G. Nave for Respondents.
 PETERS, P. J.
 Plaintiff, Earl L. Ivy, brought this action against the Pacific Automobile Insurance Company, its attorney Harold H. Cohn, and its adjuster, Stuart Dodge, for damages, actual and punitive, and to compel the defendants to satisfy a judgment secured against plaintiff by one James M. Smith. The cause of action for damages was subsequently dismissed. The trial court denied any relief to the plaintiff and he appeals.
 The controversy arises out of an automobile accident in which James M. Smith was seriously injured when hit by a truck driven by one Sawatzke. Smith brought an action against Sawatzke, Ivy and others and secured a stipulated $75,000 personal judgment against the defendants, including Ivy. In that action the Pacific Automobile Insurance Company, through its attorney Cohn, undertook the defense of all of the defendants. In the instant case it is the basic contention *655 of Ivy that the personal judgment for $75,000 secured against him by Smith resulted solely from stipulations made by Cohn which were contrary to law and the facts, made without Ivy's knowledge or authority, and which were made in bad faith in order financially to benefit the insurance company.
 [1a] The facts are as follows: On November 12, 1952, Smith was seriously injured when struck by a delivery truck operated by Sawatzke. Prior to this date Ivy had been engaged in business under the name of Earl L. Ivy, dba Ivy Enterprises. He had ceased operating this business prior to October 21, 1952. In October of 1952 the Pestgo Manufacturing Company was incorporated in California and commenced business. Ivy was one of the three directors, his wife Merle P. Ivy, and Charles Spotts being the other two directors. The appellant Ivy was secretary-treasurer of this corporation.
 At the time of the accident to Smith, Pestgo was in the process of buying from one Don C. Wood the East Bay Refinol Company. On the date of the accident Pestgo was in possession of the assets and was operating the East Bay Refinol Company, but the sale was not completed until after the date of the accident. Among the assets of East Bay Refinol Company was the delivery truck that hit Smith. On the date of the accident this truck was registered to Wood and his wife and was not transferred to Ivy until January of 1953. At the time of the accident Sawatzke was on the Pestgo payroll, but in the instant case Ivy testified that he did not know what Sawatzke was doing at the time of the accident, where he was going or where he had been.
 Smith filed suit against Sawatzke, East Bay Refinol Company and against several fictitious defendants. Ivy was served in that action individually and also as doing business as Pestgo Manufacturing Company, a corporation.
 On the date of the accident there was in full force and effect a policy issued by respondent Pacific Automobile Insurance Company to Don C. Wood insuring Wood for liability up to $50,000 for bodily injury liability to any one person. [fn. 1] Also, on the date of the accident Ivy had a comprehensive *656 policy with a $100,000 limit with the Guarantee Insurance Company, issued in his name dba as Ivy Enterprises.
 The policy of respondent Pacific contains this clause, relating to defense and settlement: "... the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."
 In defining the term "insured" the policy contains this clause: "With respect to the insurance for bodily injury, liability and for property damage liability, the unqualified word 'insured' includes the named insured and also includes any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with its permission."
 Pursuant to these provisions Pacific, through attorney and respondent Cohn, undertook the complete defense of all of the defendants in the Smith action, including the defense of Ivy personally and of Ivy dba Pestgo Manufacturing Company. Guarantee took no part in the defense of anyone. As defense, Counsel Cohn filed or caused to be filed the following documents:
 1. On March 2, 1953, he prepared and verified an answer on behalf of Ivy stating that "Defendant Earl Ivy admits that Kurt A. Sawatzke was his agent and employee," and in which he also pleaded the defense of contributory negligence. Cohn admitted that before filing this verified answer he had never met or talked with Ivy, had never asked Ivy whether or not Sawatzke was his agent or employee, and had no written statement to that effect from Ivy.
 2. On April 21, 1953, Cohn filed an answer on behalf of Pestgo which was verified by Ivy as secretary-treasurer of the corporation, denying that Sawatzke was an agent of Pestgo, and also alleging contributory negligence.
 3. May 8, 1953, Cohn prepared, verified, and filed an answer on behalf of a James Blake, also sued as a fictitious defendant and who was associated with Ivy in Pestgo, denying agency and alleging contributory negligence.
 4. On August 10, 1953, Cohn filed a stipulation between him and Smith's attorneys to the effect that the Pestgo answer should serve as the answer of East Bay Refinol Company.
 The case came up for trial on May 21, 1954. There was a *657 brief trial substantially limited to the issue of damages. Cohn stipulated that Sawatzke was the agent of Ivy both individually and dba Pestgo, that negligence on the part of Sawatzke was admitted, and that the defense of contributory negligence was waived. He also stipulated that whatever judgment was entered in favor of Smith should run against Ivy personally and as dba Pestgo Manufacturing Company. He practically conceded and made no serious objection to that judgment being in the sum of $75,000. Four days later findings and conclusions in support of such a judgment were filed, and on May 26, 1954, judgment in the amount of $75,000 plus costs was entered against Ivy and against Ivy dba Pestgo. Some six months later, that is on November 22, 1954, Cohn stipulated that the findings be amended nunc pro tunc to include new findings to the effect that Pestgo and East Bay Refinol Company were solely owned enterprises of Ivy and were operated by him under the name of "Ivy Enterprises." A court order was entered pursuant to this stipulation. [fn. 2]
 In the trial of the instant case Cohn testified that he did all of these acts without consultation with Ivy, without ever asking him whether or not he was the sole owner of Pestgo and what was the status of Ivy Enterprises. He admitted that he had never asked for or obtained any of the books or records of directors' meetings or any other records to determine whether Pestgo was the alter ego of Ivy. He vaguely stated that he thought that one of Pacific's investigators had "looked up something about that corporation, but what it was I can't tell you for certain." He produced no reports of his company relating to this question.
 Ivy testified that he was never notified by Cohn that the case of Smith v. Sawatzke had been set for trial or of the trial date and was never told by Cohn that a $75,000 judgment was to be or had been entered against him. He first learned of it from a friend several days after it was entered. He was not told that the $75,000 judgment had been partially satisfied.
 This partial satisfaction occurred under the following circumstances: Prior to May 21, 1954, the day set for trial, Cohn and Smith's attorneys had agreed upon a stipulated judgment against Ivy personally for $75,000. It was agreed that Pacific would pay Smith $25,000 in partial satisfaction of the Smith judgment, and that Smith would pursue the other *658 insurance company, Guarantee, to collect the balance. In consideration for this partial satisfaction Smith signed a covenant not to execute on the judgment against any of the defendants or against Pacific to try and collect the balance owing of $50,000. The agreement also provided that Smith would vigorously prosecute to final judgment the proposed action against Guarantee, and that in the event Smith was unsuccessful in that action Pacific would pay Smith an additional $17,500. [fn. 3] Formal contracts embodying these agreements were signed by Cohn on behalf of Pacific and by Smith and his attorneys on May 26, 1954.
 All of these stipulations and agreements were made without the knowledge or consent of Ivy. He alleged in his complaint, in both causes of action, that because of this outstanding judgment he has been unable to enter into any business transactions, that his credit has been impaired, and that he has suffered worry and mental anguish. He was not permitted to testify on these matters because the trial judge ruled, on his own motion and without objection by respondent's counsel, that the questions were not material for the reason that the first cause of action for damages had been dismissed. The court did, by its own questions and by questions asked by respondent's counsel, elicit information that in 1954 Ivy had been convicted of forgery and 25 years ago had been convicted of two other felonies. None of these crimes was in any way connected with the transactions here involved.
 The court found the facts substantially as above set forth and also found that the actions of Cohn above described "were done and performed by him in good faith and with the intention of properly performing his duties as attorney of record for this plaintiff in the Smith action; that it is not true that this plaintiff's legal liability in the Smith action could not have been substantiated by the evidence therein or by the law applicable thereto." The court also found "that the evidence available for introduction at the trial of the Smith action justified and supported the finding that Sawatzke was the agent, servant and employee of this plaintiff at the time of said accident, and was acting within the scope of said agency." The court concluded from these findings that "plaintiff has not sustained any damages whatever as a result of the actions of any of these defendants," and that the plaintiff was not *659 entitled to have Pacific Automobile Insurance Company satisfy in full the judgment in the Smith action. Judgment was entered accordingly, and Ivy appeals.
 There are two basic problems involved. One relates to the nature and extent of the duty owed by an insurance company to its insured when excess liability may be involved, and whether that duty was here violated. The second question revolves around the legal effect of the covenant not to execute, and whether the securing of that covenant fulfilled the company's obligation to its insured.
 It is obvious that in cases where excess liability may be involved the insurance company is in an anomalous position. The attorney for the insurance company then owes allegiance to two clients whose interests may be conflicting. He owes a high duty of care to both clients. Under the terms of the policy the insurance company retains control of the litigation. This conflict of interest and its effect have been discussed in many cases. It usually arises in connection with offers of settlement, but, however it may arise, the problem is the same. [2] All of the cases agree that the insurance company owes a duty to its insured, and if it violates that duty it may be liable to the insured for damages suffered by the insured in excess of its policy limits. There is some conflict as to whether liability in such cases is predicated on negligence or upon bad faith. (See notes in 62 Harv.L.Rev. 104; 26 State Bar Journal 355; see also annotation in 40 A.L.R.2d 168.) California has recently aligned itself with the jurisdictions that apply the bad faith test. (Brown v. Guarantee Ins. Co., 155 Cal.App.2d 679 [319 P.2d 69].) In that well- reasoned opinion, prepared by Acting Presiding Justice Turney Fox of the Second Appellate District, Division Two, the court collects and discusses most of the pertinent authorities on the subject, rejects the negligence test, and applies the bad faith test. [3] Under that test, when the interests of the insurance company and of the insured conflict, the insurance company must act in good faith to protect the insured, and must take into account and give fair and objective consideration to the insured's interests. [4] The insurance company has the legal right to try and protect its own financial interests, but when those interests conflict with those of the insured, the company must, in good faith, give consideration to the interests of its insured. It has no right to sacrifice the interests of the insured in order to protect its own interests. [5] This duty to act in good faith, while not *660 expressly set forth in the policy, is necessarily implied as a correlative duty growing out of certain rights and privileges which the insurance contract gives to the insurer. [6] By the terms of the insurance policy the control of the defense of the action is turned over to the insurer, and the insured is precluded from interfering in any settlement procedure. But when liability in excess of the policy limits is involved the insured's interests became directly involved. It is then that the duty to act in good faith becomes important. [7] In order to avoid liability under the bad faith rule the insurance company must give at least as much consideration to the financial well-being of the insured as it does to its own interests. These principles are all discussed at length in the Brown case, supra, and the cases announcing them collected and commented on at some length. What was there said need not be repeated in this opinion. [8] All of the cases agree that in order to act in good faith the company, as a minimum, must make a diligent effort to ascertain the facts upon which a good faith judgment may be predicated, where possible excess liability is involved, must communicate the result of such investigation to the insured, and must inform him of any settlement offers that may affect him, so that the insured may take proper steps to protect his own interests.
 [1b] In the present case the insurance company, through its attorney Cohn, clearly violated the duty it owed to Ivy. The insurance company assumed complete control of the defense of the Smith-Sawatzke action. Without investigation of the facts, and without informing Ivy, it stipulated that Sawatzke was the agent of Ivy, personally, that one of the corporate defendants was the alter ego of Ivy, and then stipulated to a judgment in excess of the policy limits. It even had the findings amended so as to stipulate that Pestgo and East Bay Refinol Company were solely owned enterprises of Ivy and were operated by him under the name of "Ivy Enterprises." This was all done in an obvious attempt to save itself money by trying to saddle most of the liability on the Guarantee Insurance Company. The record in this case indicates that the possible liability of Guarantee was questionable. All of this was done without informing Ivy or without even communicating with him. The findings that this was done "in good faith," and that "the evidence available for introduction at the trial of the Smith action justified and supported the finding that Sawatzke was the agent, ... of this plaintiff at the time of said accident" are simply not only *661 not sustained by the evidence but are contrary to the evidence. It may be assumed that Cohn honestly believed that Sawatzke was negligent and that there was no contributory negligence. It may also be assumed that Cohn honestly believed that Sawatzke was the agent of Pestgo Manufacturing Company at the time of the accident. But Cohn, according to his own admissions, had no facts justifying the admission that Sawatzke was the agent of Ivy, personally, or that Ivy was the alter ego of Pestgo, or that Ivy Enterprises was even then in existence. These stipulations were entered into in the attempt to fasten liability on Guarantee Insurance Company. That company had insured Ivy under the name of Earl Ivy dba as "Ivy Enterprises." The only possible way that Guarantee could be held liable would be if Ivy were held personally responsible for the acts of Sawatzke, and then by trying to establish that at the time of the accident Pestgo was in fact nothing more than Ivy dba as "Ivy Enterprises." Thus, the only possible way to hold Guarantee was to stipulate that Sawatzke was the agent, personally, of Ivy. Cohn had no information at all upon which to base this stipulation. This was clearly a breach of the duty the insurance company owed to its insured, and was bad faith closely akin to a fraud on Ivy.
 [9a] This brings us to the second question involved--the effect of the covenant not to execute against Ivy. The Pacific Automobile Insurance Company seeks to avoid all liability by the argument that it fulfilled its duty to Ivy by exacting from Smith a covenant not to execute against it or against Ivy on the $75,000 judgment. The argument is made that the covenant fully protected Ivy, so that he was not damaged by the entry of a $75,000 personal judgment against him. This argument fails to consider the nature of the covenant and the duty the insurance company owed to its insured. When the insurance company determined to stipulate to a judgment of $25,000 in excess of its policy limits it owed a duty to Ivy to communicate that fact to him. It would then have been up to him to decide whether he would be satisfied with a covenant not to execute against him, and, if not, what steps he wanted to take to protect his interest in excess of the policy limits. But he was never given this information, or this opportunity. Cohn never communicated these facts to him, in fact, never even told him that the Smith v. Sawatzke case was coming up for trial. Thus, he was damaged by not being given the opportunity to consider whether he wanted to stipulate to a judgment in excess of the policy limits. *662
 [10] The covenant not to execute is similar to the covenant not to sue. Whatever the legal effect of such covenants may be, and the law is not too clear on this subject, it can at least be said that such a covenant does not amount to a release or satisfaction of the debt. It does not extinguish the cause of action or the judgment. (Pellett v. Sonotone Corp., 26 Cal.2d 705 [160 P.2d 783, 160 A.L.R. 863]; see note 24 So.Cal.L.Rev. 466 at p. 474.) The judgment against Ivy personally for $75,000 still exists.
 It can be argued that Smith's original cause of action has been merged in the judgment, and has now become a debt owed to Smith which he can freely transfer, assign, sell or even give away. The covenant does not prevent such a transfer. The covenant is not made binding on assignees. What the rights of the transferee would be in such a situation is an extremely controversial question. Whether the assignee would be bound by the covenant not to execute, which in language is only made binding on Smith and not on his assigns or transferees, is a highly debatable question. Whether such a transferee would or could be a bona fide purchaser for value without notice is not an easy question to decide.
 The covenant was executed by Smith and his attorney. It recites that in consideration of the payment of $25,000 by Pacific Automobile Finance Company "and in further consideration of the forebearance of said defendants and each and all of them [fn. 4] from appealing from said judgment or taking any steps whatsoever or at all to have said judgment altered, modified or set aside," Smith agrees that he will not execute against the defendants on the judgment. It could be argued that by the bringing of the present action Ivy has violated this covenant so that the covenant not to execute is no longer binding on Smith.
 [11] Ivy was permitted to testify that because of the outstanding judgment his credit had been impaired and he was unable to enter into several business transactions, but then the trial court, of its own motion, prohibited any further testimony on this point on the ground that the cause of action for damages had been dismissed. But these allegations had been carried into the second cause of action. This is an equity suit. The evidence was clearly relevant not to show money damages but to show that the covenant not to execute *663 did not fully protect Ivy. The ruling excluding the evidence was therefore erroneous.
 [9b] Enough has been said to indicate that the covenant not to execute did not fully protect Ivy. The insurance company had no legal right to settle the Smith action for an amount in excess of the policy limits without informing Ivy. The insured had a legal right to decide for himself whether he would settle for an amount of $25,000 in excess of the policy limits, and, if so, whether he was willing to accept the covenant not to execute for his sole protection. He was deprived of this right. Such deprivation amounted to a breach of the duty owed by the company to him.
 [12] There can be no doubt that Attorney Cohn participated in, in fact conceived and carried out, the settlement agreement. In doing so without the knowledge and consent of Ivy he violated the duty he owed to Ivy, who was one of his clients. He had no legal right to stipulate away the insured's rights without his consent for the benefit of his other client, the insurance company. (Witaschek v. Witaschek, 56 Cal.App.2d 277, at p. 283 [132 P.2d 600].) The obligation of fair dealing and the duty to act in good faith rest equally upon the insurance company and the attorney. The attorney's actions in the present case prejudicially affected Ivy's substantive rights.
 The same rule does not apply to Stuart Dodge, the adjuster for Pacific Automobile Insurance Company, named as a defendant in the present action. There is not one word of evidence that he suggested or participated in, or authorized the settlement agreement. There is no evidence that he breached any duty owed to anyone. As to him the judgment should be affirmed.
 From what has been said it is apparent that the judgment appealed from must be reversed as to Pacific Automobile Insurance Company and the attorney Cohn. But in reversing the case this court expresses no opinion on the relief that should be granted to Ivy. This is an equitable action, and the trial judge has the power to do equity, considering the rights of both sides of the controversy. If the only adequate relief that can be afforded Ivy is the payment of the balance of the $75,000 judgment, then that is the relief that should be granted. But that is a somewhat heroic remedy. Ivy has no legal interest in having the Smith judgment paid except to protect himself. The covenant not to execute did not fully protect him. But there may be other less drastic forms of *664 relief available. All forms of relief should be investigated by the trial court on the retrial.
 The judgment as to Stuart Dodge is affirmed. The judgment as to Pacific Automobile Insurance Company and Cohn is reversed, appellant to recover costs on appeal from the two last named respondents.
 Bray, J., and Wood (Fred B.), J., concurred.
NOTES
[fn. 1] 1. Attached to this policy is an assignment of interest from Wood to Pestgo dated November 1, 1952. The policy and assignment were introduced into evidence solely to show that under the terms of the policy respondent Cohn was representing Ivy in the action of Smith v. Sawatzke, et al. The court limited the documents to this purpose and refused to admit them on the issue of the validity of the assignment.
[fn. 2] 2. "Ivy Enterprises" was the named insured in the policy of the Guarantee Insurance Company issued to Ivy.
[fn. 3] 3. The Pacific policy had a $50,000 limit of liability for injury to one person. Under these agreements Pacific would save at least $7,500, and possibly $25,000.
[fn. 4] 4. Among the defendants named in the agreement are Sawatzke, East Bay Refinol Company, Earl L. Ivy, individually and doing business as Pestgo Manufacturing Company, and Pestgo Manufacturing Company.