[Civ. No. 35332. Second Dist., Div. Four. Jan. 18, 1971.]

WALLACE H. SHAPERO, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Ronald M. Sohigian and Hindin, McKittrick & Marsh for Plaintiff and Appellant.

Ruston & Nance and Donald A. Ruston for Defendant and Respondent.

Henry E. Kappler, Fulton Haight, Gilbert, Thompson, Kelly, Crowley & Jennett, Jean Wunderlich, Daniel J. Culliton, Veatch, Carlson, Dorsey & Quimby, Chase, Rotchford, Drukker & Bogust and Ingall W. Bull, Jr., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**FILES, P. J.**—In this action against a casualty insurance company for damages for its failure to settle a claim within the policy limits, the jury returned a verdict in favor of the defendant, and plaintiff has appealed from the judgment. A unique feature of the case is that the insured died in the accident from which the claim against her arose, and left no property. Upon the record made here we affirm the judgment.

On December 25, 1969, plaintiff Wallace Shapero was riding in the back seat of his station wagon, operated by his wife Joanna, when it collided with a Volkswagen, traveling in the opposite direction, which swerved into

its path. The occupants of the Volkswagen, Betty Jane Bronson and Arlene Woods Newcomb, were killed in the collision and both of the Shaperos were injured. The Volkswagen was owned by Lesley Yeager, who had left it with Mrs. Newcomb.

Miss Bronson was insured under a policy issued by defendant Allstate covering her liability up to a limit of $10,000 for each person injured and $20,000 for each accident. Miss Yeager, and anyone using the Volkswagen with her permission, were insured under a policy issued by Interinsurance Exchange of the Automobile Club of Southern California (hereinafter Auto Club), which also stated limits of $10,000 per person and $20,000 per accident.

The position of the bodies after the accident tended to indicate that Miss Bronson had been the driver. There was a factual issue as to whether this use of the Volkswagen had been with the permission of the owner.

The Shaperos employed attorney Irving Green to prosecute their claims for damages. Mr. Eugene Wohlner, an attorney employed in Mr. Green's office, applied for and obtained appointment as administrator of the estate of Betty Jane Bronson. A claim on behalf of the Shaperos was presented to Mr. Wohlner, as administrator, who denied it, and an action thereupon was filed by Mr. Green on behalf of Mr. and Mrs. Shapero against Wohlner, as administrator, and Lesley Yeager. The amounts demanded in the prayer were $150,000 plus special damages for personal injuries to Mr. Shapero, $80,000 plus special damages for personal injuries to Mrs. Shapero, and $2,000 property damage. Allstate, through attorneys employed by it, assumed the defense of the action on behalf of the administrator, and Auto Club, through another firm of attorneys, defended Miss Yeager.

Prior to the trial of the injury case the Shaperos offered to settle all of their claims against all defendants for a total of $27,500. No smaller demand and no offer to settle with Allstate alone were ever made. Auto Club offered to contribute $5,000 to a joint settlement, and Allstate made no settlement offer.

The trial of that action resulted in a verdict and judgment awarding Mr. Shapero for his injuries $59,725 and Mrs. Shapero $6,350 against Wohlner as administrator. The jury found in favor of Miss Yeager.

Allstate thereafter satisfied Mrs. Shapero's judgment and paid to Mr. Shapero the amount of its policy limit, namely $10,000 plus costs and interest to the date of payment. Wohlner, as administrator, then assigned to Mr. Shapero all of the insured's rights "for breach of contract and bad faith, in failing to settle a claim against the estate."

Mr. Shapero, as assignee, then filed this action against Allstate, his complaint alleging that Allstate had violated its implied covenant to its insured in that it had failed to conduct in good faith any negotiations for settlement by way of compromise, and had failed to use reasonable skill and diligence in conducting negotiations, as a result of which the insured had been damaged to the extent of $49,725, this being the amount by which the judgment exceeded the policy limit. The thrust of this claim was that Allstate realized or should have understood that a jury would award Mr. Shapero damages in excess of the policy limit of $10,000, and that Allstate had breached its duty to the Bronson estate by failing to press vigorously for a compromise of $10,000 or less with Shapero's attorney before trial; and that had Allstate been sufficiently aggressive in this respect the Shapero injury claim could have been settled within the policy limits, so that the estate would have escaped any further liability.

This case was tried before a jury which returned a verdict in favor of Allstate.

The trial of this action explored in detail the manner in which Allstate and its attorneys handled the Shapero claims, their communications with each other, with Auto Club and with plaintiff's counsel, and the reasons why the claims were not compromised. Upon this record Shapero does not contend here that the evidence is insufficient to support the verdict. His principal contention is that the trial court erred in receiving in evidence the fact that the Bronson estate had no assets, and in instructing the jury that it could consider that fact.

The record shows without conflict that Miss Bronson left no estate whatever. The only asset of the estate, other than the liability insurance, was some insurance which paid funeral and burial expenses. Wohlner, as administrator, recovered $500 under the latter policy. Since under Probate Code section 950 claims for funeral expenses have priority over all other debts except expenses of administration, it is apparent that this small sum could never have been made available for other purposes.

The record is also clear that, long prior to the trial of the injury action, everyone concerned recognized that a judgment against Wohlner, as administrator, would produce nothing except the Allstate insurance. The fact that Wohlner, an employee associate of the Shaperos' attorney, was selected to serve as administrator, reflects an early recognition that the administrator's duties would be purely formal. Ordinarily an administrator, when sued for the alleged tort of the decedent, must use his best efforts to defeat the claim, to cooperate with the insurance carrier and defend against any threatened judgment in excess of policy limits. Mr. Wohlner, an attorney employed in

the office of the Shaperos' attorney, was in no position to do that, and it is obvious from his acceptance of the position that both he and Mr. Green were satisfied that as administrator he would have no interest adverse to the Shaperos because only Allstate's money was at risk. We do not suggest that there was any impropriety in Mr. Wohlner's assuming this position. The fact is cited as illustrative of the confidence of all concerned that the estate, as such, was only a formal party to the litigation; and that a judgment against the estate would be of no consequence except as a basis of recovery of the insurance money.

We turn now to the principles of law which govern the duty of an insurer under a liability policy. The most recent statement of our Supreme Court on this subject is in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]:

"The liability of an insurer in excess of its policy limits for failure to accept a settlement offer within those limits was considered by this court in *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654 [328 P.2d 198]. It was there reasoned that in every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; that it is common knowledge that one of the usual methods by which an insured receives protection under a liability insurance policy is by settlement of claims without litigation; that the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests; and that when 'there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim.' (50 Cal.2d at p. 659.)"

In an earlier leading case, *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 659-660 [320 P.2d 140], the court explained the problem thus:

"Under that [bad faith] test, when the interests of the insurance company and of the insured conflict, the insurance company must act in good faith to protect the insured, and must take into account and give fair and objective consideration to the insured's interests. The insurance company has the legal right to try and protect its own financial interests, but when those interests conflict with those of the insured, the company must, in good faith, give consideration to the interests of its insured. It has no right to

sacrifice the interests of the insured in order to protect its own interests. This duty to act in good faith, while not expressly set forth in the policy, is necessarily implied as a correlative duty growing out of certain rights and privileges which the insurance contract gives to the insurer. By the terms of the insurance policy the control of the defense of the action is turned over to the insurer, and the insured is precluded from interfering in any settlement procedure. But when liability in excess of the policy limits is involved the insured's interests became directly involved. It is then that the duty to act in good faith becomes important. In order to avoid liability under the bad faith rule the insurance company must give at least as much consideration to the financial well-being of the insured as it does to its own interests."

Under the special facts of the case at bench the conflict of interest and the resulting problem discussed in those cases did not exist.

Allstate could not be found guilty of bad faith for accepting as a working hypothesis the fact which was also assumed by the personal representative of its assured—that the estate had no interest, no financial stake in the outcome of the litigation, and no assets which would be exposed to risk by a failure of Allstate to settle.[1]

Shapero's brief here points out that the insurance involved in this case was in fact, and by law required to be, insurance against liability, and not merely against loss. (See Ins. Code, § 11580.) This means that the insurer must discharge the liability of the insured, within the policy limits, even though the claim could not have been collected from the insured by reason of his insolvency. (See *Alberts* v. *American Casualty Co.* (1948) 88 Cal. App.2d 891, 898-899 [200 P.2d 37].)

The argument made by Shapero's brief, though not articulated in this language, seems to assume that because this is a liability policy the insurer has a duty to protect the insured from all liability. Actually the express covenant to protect against liability is limited to $10,000 per person. Allstate did discharge its duty in this respect by providing a defense and by paying up to the policy limit. The claim now asserted against Allstate is not for breach of its duty to discharge liability, but for the alleged violation

---

[1] This is not to say, however, that an insolvent estate may never recover on such a cause of action. Where assets exist, the interests of the estate are involved, and it may be subjected to financial harm to the detriment of the general creditors. But we do not have that situation here.

A different case is also made where the insured is a living person. Even though without any assets, he has an interest in being relieved of liability to protect his future solvency and credit standing. (See *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App. 2d 679, 690 [319 P.2d 69].)

of its duty to consider in good faith the interest of the insured in settlement, where the interests of the insured and insurer are in conflict.

■ Where there is a breach of the latter duty, the damage to the insured may be measured by the entire amount of the excess liability. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661 [328 P.2d 198].)

■ Shapero's argument appears not to distinguish between the insurer's duty to discharge liability, which is limited in amount, and the measure of damages for breach of the implied covenant to consider the interests of the insured in settlement negotiations.

In the case at bench the uncontested facts support only the finding that there was no breach of the implied covenant because there was no interest to be damaged. The realities of the case are that Allstate was no more in a position of conflicting interest than was the nominal representative of the insured, Wohlner.

No discussion of specific jury instructions or rulings by the trial court is required because the evidence would not have supported a judgment for plaintiff.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1971.