[Civ. No. 55179. Second Dist., Div. Three. Feb. 5, 1980.]

DENISE DOSER, a Minor, etc., et al., Plaintiffs and Appellants, v. MIDDLESEX MUTUAL INSURANCE COMPANY, Defendant and Respondent.

■■■■■■■■■■■■■■■■

COUNSEL

Magana, Cathcart & McCarthy, Magana, Cathcart, McCarthy & Pierry, Anthony De Los Reyes and Carolyn D. Rich for Plaintiffs and Appellants.

Shield & Smith, Theodore P. Shield and Timothy L. Walker for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Plaintiffs and appellants Denise Doser, Dean Doser and Margaret Doser (Doser Heirs), as alleged assignees of a cause of action for bad faith breach of an insurance contract of the estate of Richard Harold Kelly (Estate), appeal from a judgment entered on March 28, 1978, in favor of defendant and respondent Middlesex Mutual Insurance Company (Middlesex).

### STATEMENT OF THE CASE AND FACTS

The case underlying the instant appeal commenced several years ago with the untimely deaths of Richard Harold Kelly (Kelly) and Dean Doser (Doser) in November of 1972. At the time, Kelly was a member of the Palomar Flying Club (Club) and on November 22, 1972, he was piloting a Piper aircraft leased by the Club from Pacific Aero Leasing & Service, Inc. (Pacific). Doser was flying with Kelly as a passenger when the plane crashed in Mexico.

Doser left a wife and two children. The Doser Heirs hired attorney Daniel C. Cathcart (Cathcart) to represent them.

Kelly left an estate that was practically worthless. However, an insurance policy issued by Middlesex covered Pacific and the members of the Club.[1] Since Kelly was a member of the Club and was flying a plane leased from Pacific at the time of the accident, his Estate potentially had available to it the proceeds of the Middlesex policy.

---

[1]The insurance policy issued by Middlesex covered Pacific and the Club and its members. The policy pursuant to Insuring Agreement No. 1 agreed "[t]o pay on behalf of the Insured all sums which the Insured shall become *legally obligated* to pay as

■■■■■■■

Prior to his death, Kelly had been a client of San Diego Attorney Robert Madruga (Madruga). A few days after the plane crash, Kelly's girlfriend, Jane D. Stocks (Stocks), got in touch with Madruga, with the request that he represent Kelly's Estate. Madruga agreed, and proceeded with the probate of the Estate, and Stocks became the administratrix.

On behalf of the Doser Heirs, Cathcart filed a $500,000 claim against the Estate, which was rejected by Stocks on August 9, 1973. Thereafter, on August 16, 1973, a complaint for damages for wrongful death was filed in the *San Diego Superior Court*[2] by Denise Doser, a minor by her guardian ad litem Margaret Doser, Margaret Doser, and Dean Doser as plaintiffs against Jane D. Stocks, administratrix of the Estate of Richard Harold Kelly, and Does 1-20 as defendants. The complaint alleged that Doser was a passenger in a certain Piper aircraft piloted by Kelly, and that as a result of the negligence of the defendants including Kelly, the aircraft crashed on November 22, 1972, in Mexico, causing the deaths of Kelly and Doser.

The complaint set forth that Stocks was the duly appointed administratrix of the Estate and in that capacity had rejected the Doser Heirs' proper and timely claim.

The plaintiff heirs prayed for $1 million in general damages.

On October 3, 1973, Madruga filed an answer on behalf of Stocks as administratrix, generally denying the allegations.

On April 9, 1974, attorneys Kirtland & Packard filed an answer on behalf of Pacific, sued and served as Doe 1, and on June 4, 1974, the

---

damages because of...death...sustained by any passenger...caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." (Italics added.)

Insuring Agreement No. 11 thereof provided that the "Company shall: (a) defend any suit against the Insured..." alleging such death.

Condition No. 1 of the policy required that "[w]hen an occurrence takes place, written notice shall be given by or on behalf of the Insured to the Company..." of the particulars.

Condition No. 2 likewise provided that "[i]f claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

Condition No. 6 stated that "[n]o action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of [the] Policy,..."

[2]The San Diego file was received as a defense exhibit in the case before us. Pursuant to rule 12(a) of the California Rules of Court, we have made the file in San Diego Superior Court case number 345576 part of the record on appeal.

same attorneys filed an answer on behalf of the Club, sued and served as Doe 2.[3]

Dismissals against Pacific and the Club were entered on August 19, 1975, following the payment of $15,000 to the Doser Heirs, as a settlement on their behalf.

On January 24, 1977, Stocks made a motion to dismiss the action for failure to bring the case to trial within two years, which was successfully resisted.

On May 23, 1977, Stocks moved for an early trial setting, which motion was granted, and the case was set for trial on November 7, 1977. However, the case did not go to trial and on August 11, 1978, pursuant to a request filed by the Doser Heirs, the entire wrongful death action was dismissed.

In undertaking the representation of the Estate, Madruga was unaware that any insurance was available to the Estate.

On September 13, 1973, Madruga wrote a letter to Cathcart stating he was looking into the possibility of insurance, to which Cathcart responded within two weeks, indicating that there was in fact insurance and that the insurance facets of the case were being handled by Funaro & Associates (Funaro),[4] setting forth Funaro's phone number. Cathcart requested that Madruga forward the pleadings of the wrongful death action to Funaro, together with a demand that Funaro's principals defend the Estate.

It was after the receipt of Cathcart's letter that Madruga prepared and filed an answer on behalf of the Estate.

During a deposition of Stocks on March 26, 1974, in the course of litigation, Madruga was provided with a copy of the Middlesex policy and read the provision which required that upon a claim being made of,

---

[3]Appearance and representation of these latter two defendants were arranged by Omni Aviation Managers, Inc. (Omni). Omni was the agent for Middlesex and, pursuant to their agreement, had the authority to hire and pay attorneys.

[4]Funaro, an independent insurance adjuster in the field of aviation accident investigation, was contacted by Omni to investigate the plane crash in question shortly after it happened.

or a suit being filed against, the insured, the insured should immediately forward to Middlesex all relevant papers.

The following day, a year and some four months after the accident and ensuing claim against the Estate, Madruga sent a letter to Funaro demanding that Middlesex defend the Estate.

On May 24, 1974, while the wrongful death action was pending, Cathcart sent a letter to Madruga charging Middlesex with bad faith for failure to defend the Estate or settle the Doser Heirs' claim for the policy limits of $100,000. Cathcart indicated that the Doser Heirs were willing to settle all claims against the Estate for the wrongful death of Doser and take an assignment of all causes of action the Estate might have against Middlesex, including all claims for breach of contract and bad faith refusal to settle, that the Doser Heirs would then proceed to file suit against Middlesex directly, and that the pending wrongful death action should be taken off calendar while the suit against Middlesex was prosecuted.

The letter went on to justify the requested settlement figure of $980,000, and reiterated the Doser Heirs' willingness to take an assignment in lieu of payment of any monies, and requested that Stocks execute the assignment which Cathcart had already prepared and enclosed. The assignment which was signed by Stocks on July 31, 1974, read in part as follows:

"1. That all claims for damages for wrongful death against the Estate of Richard Harold Kelly arising out of the aircrash in which he met his death, which crash occurred in the Republic of Mexico on or about the 22nd day of November, 1972, are compromised in the amount of $980,000.

"2. That in full and final satisfaction of this claim the heirs of Dean Doser will execute general releases releasing the Estate of Richard Harold Kelly of any and all claims for damages arising out of said accident, including all claims for damages for the death of Dean Doser, in exchange for this assignment of all claims and causes of action against the Middlesex Mutual Insurance Company and any other insurance carrier which may provide coverage to the Estate of Richard Harold Kelly for claims arising out of the subject accident. . . ."

No releases from the Doser Heirs were ever forthcoming. The wrongful death action in San Diego was not dismissed until August 1978.

Omni learned of the accident as early as November 27, 1972, five days after the crash, and immediately hired Funaro to investigate the accident. Omni received a copy of Madruga's March 27, 1974, letter to Funaro, requesting insurance company defense of the Estate. Omni employed counsel to represent Pacific and the Club but, for some obscure reason, failed to procure representation for the Estate at the same time. On April 12, 1974, Omni denied the Doser Heirs' demand for the $100,000 policy limits.[5]

It was not until January 1977 that Attorney Arnold Ross, presumably also hired by Omni, was substituted in as attorney of record in place of Madruga to defend the Estate in the wrongful death action in San Diego. Ross and Attorney Michael M. Edwards, who was retained by Middlesex, were engaged in that capacity during the pendency of the breach of contract action in Los Angeles.

After the Doser Heirs had in hand the executed assignment of July 31, 1974, they left the San Diego wrongful death action in abeyance and filed an action against Middlesex in the Los Angeles Superior Court, which action and its consequences constitute the subject matter of the appeal before us.

This action was commenced on October 3, 1974, when the Doser Heirs as alleged assignees of the Estate filed a complaint against Middlesex in the Los Angeles Superior Court, praying for $980,000 in damages allegedly resulting from a bad faith breach of an insurance contract. The complaint alleged, inter alia, that passenger Doser was killed November 22, 1972, when a plane piloted by Kelly crashed in Mexico; that Middlesex was obligated to defend the wrongful death action brought by the Doser Heirs against the Estate; that no defense was tendered and the Estate was therefore unprotected; that the amount of the claim of the Doser Heirs far exceeded the assets of the Estate; that in an effort to avoid certain bankruptcy, (and for other good reasons) the administratrix compromised and settled the wrongful death claim for $980,000 and, in satisfaction of said settlement, assigned all causes of action against Middlesex to the Doser Heirs, which causes of action inured to the Estate as a result of Middlesex's negligence, breach of contract, and bad faith; and that Middlesex was liable to the Doser Heirs for $980,000 in damages.

---

[5]In January 1977, Middlesex offered the Doser Heirs the policy limits of $100,000, less $15,000 previously paid to them.

The jury returned a special verdict finding that Middlesex breached its implied covenant of good faith and fair dealing with the Estate by failing to defend the Estate when requested to do so on March 27, 1974, and by failing to settle when presented with the demand letter of April 12, 1974. The jury further found that the Estate breached its implied covenant of good faith and fair dealing with Middlesex.

The trial court thereafter made 48 findings of fact and 8 conclusions of law, and entered judgment for Middlesex on March 28, 1978.

## CONTENTIONS

The Doser Heirs contend that the trial court committed several prejudicially erroneous evidentiary rulings, requiring a reversal.

Middlesex counters that assuming arguendo the trial court erred in the admission of evidence, the purported assignment did not support a cause of action because the Estate never suffered any legal liability and such invalidity is dispositive of the case. We agree and, therefore, affirm the judgment.

## DISCUSSION

■ Case law has established the proposition that an insured who has suffered damages in excess of an insurance policy as a consequence of an insurer's bad faith failure to settle a claim may sue the insurer for breach of contract. (See *Comunale* v. *Traders and General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]; *Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433 [92 Cal.Rptr. 244]; *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142]; *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679 [319 P.2d 69].) Nor is there any doubt that such an insured's cause of action may be properly assigned. (See *Shapero, supra; Critz, supra; Brown, supra.*)

However, it is fundamental that a valid cause of action must exist in the assignor insured before an assignee can prevail against the insurer. The assignee "stands in the shoes" of the assignor and merely acquires the interest of the assignor. (Civ. Code, § 1459; Code Civ. Proc., § 368; *Berrington* v. *Williams* (1966) 244 Cal.App.2d 130, 135-136 [52 Cal.Rptr. 772]; Rest., Contracts, § 167.)

■ The basis of the Doser Heirs' derivative contractual cause of action in the instant case was the alleged misconduct of Middlesex in its handling of the San Diego Superior Court case of Doser v. Stocks. However, no judgment had been rendered in that case at the time the action against Middlesex was filed and tried in the Los Angeles Superior Court. No legal liability was ever imposed as a result thereof, since that entire case was dismissed in August 1978. Therefore, no cause of action ever arose in the Doser Heirs.

*Comunale* v. *Traders and General Ins. Co., supra,* 50 Cal.2d 654, involves a fact situation wherein there was an alleged failure of an insurer to settle within policy limits, and the court stated that the cause of action against the insurer arose when the *judgment* in the bodily injury action became final. (*Id.,* at p. 662.)

*Brown* v. *Guarantee Ins. Co., supra,* 155 Cal.App.2d at pages 689-690, also dealt with this issue, and the court stated: "Defendant argues that payment by the insured of the amount of the judgment in excess of the policy limit is a prerequisite to his cause of action for wrongful refusal to settle. It is true that some courts have held that payment by the insured is a condition precedent to his cause of action against the insurer. [Citations.] However, logic and reason support the contrary view that *the insured's cause of action arises when he incurs a binding judgment in excess of the policy limit.*" (Italics added.)

We note that contrary to the fact situation in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], here the Doser Heirs sued Middlesex relying on an assignment of the Estate's alleged cause of action against Middlesex, and therefore contractual principles apply. This is not a case where the plaintiff was a third party claimant suing the insurer directly for failing to settle in violation of the provisions of the Unfair Practices Act (Ins. Code, § 790 et seq.), as contemplated by *Globe, supra,* at pages 884-885.

However, even under the reasoning in *Globe,* "...the third party's suit may not be brought until the action between the injured party and the insured is concluded ...[and] liability of the insured is first determined...." (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d at pp. 884, 892.)

In the instant case, the breach of duty to settle within policy limits presented only the possibility that a judgment might be rendered in ex-

cess of policy limits. Even if Middlesex did reject the settlement offer within policy limits, Middlesex would not have been subject to liability if Middlesex had been successful in the defense of the litigation and a judgment had been rendered below the settlement offer, or a complete defense verdict had been obtained.

However, had the underlying wrongful death case been prosecuted to judgment, and had that judgment been in excess of the $100,000 policy limit, the Estate would have been exposed to damages for the amount of any judgment in excess of the policy limit. At that juncture, a cause of action in the Estate for Middlesex's alleged bad faith refusal to settle would have arisen, and that mature cause of action could have been assigned to the Doser Heirs.

"It is clear that mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable [citations]." (*Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924]; *Pacific Pine Lumber Co.* v. *Western Union Telegraph Co.* (1899) 123 Cal. 428 [56 P. 103].)

 The rationale of the cases requiring a judgment as a condition precedent to an insured's cause of action against an insurer becomes manifest when we deal with the issue of damages in this case. We are concerned here not only with the fact of damages being clearly established, but the certainty of the amount thereof as well. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 846, p. 3140.) The glaring flaw in the Doser Heirs' case against Middlesex is the unprecedented manner in which they arrived at the $980,000 damage figure. They bootstrapped their damages with the ingenious assistance of counsel.

No judge or jury ever considered the facts of the wrongful death case and came up with an appropriate verdict on which a judgment could be based. No agreement as to damages was ever reached in which a representative of the insurance company participated. Cathcart on behalf of the Doser Heirs merely "compromised" their claim for damages against the Estate for $980,000, a figure $480,000 in excess of their original claim, only $20,000 less than their prayer in the San Diego action, and $880,000 in excess of the Middlesex policy.

In the middle of the pending wrongful death litigation, Cathcart on May 24, 1974, wrote his letter to Madruga indicating that "[i]t is obvi-

ous by now that the public liability insurance carrier is guilty of not only a breach of contract but, in addition, in bad faith for failing to defend the Estate of Kelly. . . . " Cathcart continued, "On behalf of Mr. Doser's heirs, we are willing to settle all claims against Mr. Kelly's estate. . . for $980,000. . . [and] [i]n satisfaction of this claim, we are willing to take an assignment in lieu of payment of any monies of all rights and causes of action against any and all insurance companies having coverage available to the Estate of Kelly. . . . " The proposed assignment was enclosed.

Admittedly, Madruga never negotiated the $980,000 figure and never offered the $100,000 policy limits in settlement to protect the Estate, but simply accepted the agreement proposed by Cathcart. At the date of the execution of the assignment, namely July 31, 1974, Madruga had seen a copy of the Middlesex policy some three months before, but made no suggestion to Cathcart that Middlesex be given the opportunity to approve the proposed agreement as required by condition 6 of the policy, prior to Madruga's acquiescing in Cathcart's proposal.[6]

Indeed, there was a question in the trial court's mind as to whether Madruga engaged in conduct other than mere acquiescence in Cathcart's proffered figure, as reflected in finding No. 47, which reads: "The purported assignment of all claims entered into between the DOSER HEIRS and the ESTATE OF RICHARD HAROLD KELLY (Exhibit 9) was invalid for any one of the following reasons:. . [including] the illusory nature of the agreement. . . ."

Condition 6 of the policy allows for the amount Middlesex is obligated to pay to be determined by written agreement as a condition precedent to action against it. However, we cannot construe the one-sided compromise and/or assignment as such an agreement to fix the amount of damages. Condition 6 of the policy and basic fairness require that Middlesex be a party thereto.

To excuse Middlesex's participation in arriving at a damage figure enabling action against it by the Estate or the Doser Heirs as assignees because of an alleged breach of contract by Middlesex would be to invite collusion between the claimants and the insured. Here, Cathcart

[6]The insurance policy itself provides in condition 6 that "[n]o action shall lie against the Company. . . until the amount of the Insured [sic] obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement between the Insured, the Claimant and the Company. . . ."

acting virtually alone set the amount of damages, albeit on behalf of his clients and as an expert in the field of aircraft accident litigation. We know of no legal precedent condoning such action, nor do we propose to author an opinion which would become such authority. Such a worthless paper transaction cannot support the Doser Heirs' damage claim in their cause of action against Middlesex.

The Doser Heirs' assigned cause of action was invalid because the liability of Middlesex to the Estate has not been determined in a manner approved by the case law or contemplated by the insurance contract. The adverse resolution of this issue is dispositive of the appeal.

While there are a number of other enticing issues raised by the briefs in this case, we do not reach them in the interests of maximizing the use of our meager resources.

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied February 29, 1980, and appellants' petition for a hearing by the Supreme Court was denied April 3, 1980.