62 F.3d 1424
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Herman FRITZ, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellee.
 No. 93-16339.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1995.
Decided July 28, 1995.
 
 Before: FLETCHER, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Herman Fritz appeals a summary judgment denying his claims of bad faith against defendant Allstate Insurance. We affirm in part and reverse in part.
 
 FACTS
 
 3
 On September 12, 1988, Fritz was standing on the roadside with his bicycle when a pickup truck driven by Jean Clouette, Allstate's insured, struck him, causing severe injuries to his leg. Clouette returned to his home and committed suicide. Allstate insured Clouette for a maximum of $50,000. Fritz submitted a claim to Allstate for his injuries.
 
 
 4
 Clouette died intestate. Clouette's property, including the truck, was held in joint tenancy with right of survivorship with his daughter and sole heir, Linda Wittorff. Wittorff served as the administratrix of Clouette's estate and declared that the estate contained only de minimis assets, such as household goods and garden tools.
 
 
 5
 Fritz filed a personal injury action against Clouette's estate and Wittorff in California state court. Fritz offered to settle for $50,000, but Allstate did not accept. Fritz proceeded to trial and obtained a $236,229.21 judgment against Clouette's estate. Fifteen thousand dollars of the judgment ran against Wittorff individually. Allstate paid the policy limits of $50,000 to Fritz in partial satisfaction of the judgment.
 
 
 6
 Fritz obtained an assignment of the estate's and Wittorff's rights, if any, to obtain an excess judgment against Allstate. In exchange, Fritz agreed to make no further claims against the estate or Wittorff. Fritz then filed an action in California Superior Court against Allstate in his own behalf and as assignee of Clouette's estate and Wittorff seeking payment of the excess judgment. Fritz alleged three causes of action: 1) breach of the covenant of good faith and fair dealing from the failure to settle; 2) bad faith denial of the contract to waive policy limits; and 3) intentional infliction of emotional distress.
 
 
 7
 Allstate removed the suit to federal court and moved for a summary judgment dismissing Fritz's entire action. The district court granted Allstate's motion on the first two causes of action and dismissed the claim for intentional infliction of emotional distress with 10 days leave to amend the complaint. Fritz did not amend his complaint, and the parties stipulated that the district court's judgment was final. Fritz timely appealed.
 
 JURISDICTION
 
 8
 The district court had original jurisdiction under 28 U.S.C. Sec. 1332, and the suit was subject to removal under 28 U.S.C. Sec. 1441. This is not a "direct action" suit under 28 U.S.C. Sec. 1332(c) that must be brought in state court; Fritz has secured a judgment against the insured; this suit concerns claims of bad faith against the insurer. See Searles v. Cincinnati Ins. Co., 998 F.2d 728, 728-30 (9th Cir. 1993); Beckham v. Safeco Ins. Co., 691 F.2d 898 (9th Cir. 1982). This is a diversity action; defendant is a citizen of Illinois, the situs of its principal place of business and its incorporation, 28 U.S.C. Sec. 1332(c), and plaintiff is a citizen of California. This Court has appellate jurisdiction over the district court's final judgment. 28 U.S.C. Sec. 1291.
 
 STANDARD OF REVIEW
 
 9
 We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party, to determine whether there are disputed issues of material fact and whether the district court correctly applied the relevant substantive law. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir. 1992); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir. 1989). In this diversity suit, California law applies. Allstate Ins. Co. v. Smith, 929 F.2d 447, 449 (citing Hampton v. Gebhardt's Chili Powder Co., 294 F.2d 172, 172 (9th Cir. 1961)).
 
 DISCUSSION
 
 10
 * Fritz, as assignee of the estate, argues first that Allstate is liable for the excess judgment because it acted in bad faith by refusing to accept his offer to settle within the policy limits. We disagree.
 
 
 11
 * In California, an insurer has a duty to protect the insured's assets from the risk of a judgment in excess of the policy limits by accepting reasonable settlement offers within the policy limits. Crisci v. Security Ins. Co., 426 P.2d 173, 177 (Cal. 1967); Ivy v. Pacific Auto. Ins. Co., 320 P.2d 140, 146 (Cal. Ct. App. 1958). However, in Shapero v. Allstate Insurance Co., 92 Cal. Rptr. 244, 245 (Cal. Ct. App. 1971), a California court of appeals recognized an exception to this rule. It held that an insurer does not breach its duty of good faith by failing to settle when the insured has died and left no assets in his estate. Id. The court reasoned that in those circumstances, none of the insured's assets were exposed to the risk of an excess judgment. Id. at 248. Shapero distinguished Brown v. Guarantee Insurance Co., 319 P.2d 69 (Cal. Ct. App. 1957), where the insured was alive but insolvent, noting that in that case the insured "has an interest in being relieved of liability to protect his future solvency and credit standing." Shapero, 92 Cal. Rptr. at 248 n.1; accord San Jose Production Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 704 (9th Cir. 1984) (no risk to insured where there are no policy limits) (citing Shapero, 92 Cal. Rptr. at 438).
 
 B
 
 12
 The district court held that Allstate did not act in bad faith because, under the rule of Shapero, none of the insured's assets were exposed to risk by the denial of the settlement offer because there were no assets in Clouette's estate. On appeal Fritz argues that the district court should have disregarded Shapero, adopting instead MaGuire v. Allstate Insurance Co., 341 F. Supp. 866 (D. Del. 1972) (applying Delaware law), which Fritz claims is a better rule of law. We find this argument to be without merit. Fritz also argues that the estate did have assets which were at risk. We decline to reexamine this claim.[1]
 
 
 13
 The district court did not err by declining to follow MaGuire for two reasons.
 
 
 14
 First, we are reasonably confident that Shapero would be followed by the Supreme Court of California. In this diversity suit, California law applies. See, e.g., Allstate Ins. Co. v. Smith, 929 F.2d 447, 449 (9th Cir. 1991). The district court is bound by the decisions of the California Supreme Court, Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986), modified, 810 F.2d 1517 (9th Cir. 1987), and the California intermediate appellate courts unless there is substantial reason to believe that the California Supreme Court would decide the issue differently, American Triticale, Inc. v. NYTCO Servs., Inc., 664 F.2d 1136, 1143 (9th Cir. 1981). Fritz has presented no such rationale.
 
 
 15
 Even were Shapero not controlling, it is doubtful that California would follow MaGuire since the MaGuire court's approach to contract interpretation differs from that of the California courts. The MaGuire court found that policy language ("The bankruptcy or insolvency of an insured person or that person's estate won't relieve us of any obligation.") language identical to that in the Allstate policy constituted a waiver of its policy limits.
 
 
 16
 Contrary to the approach in MaGuire, California courts would construe this sentence "in context, with regard to its function in the policy." Bank of the West v. Superior Court, 10 Cal. Rptr. 2d 538, 545 (Cal. 1992). Consequently, we would construe this sentence in the context of the preceding paragraph, which states:
 
 
 17
 If liability has been determined by judgment after trial ... then whoever obtains judgment may sue up to the limits of the policy....
 
 
 18
 (Emphasis added). It is clear that "any obligation" refers to Allstate's duty to pay a judgment against the insured "up to the limits of the policy" even if the insured is insolvent. We conclude the district court properly declined to adopt the MaGuire court's reasoning.
 
 C
 
 19
 We conclude that Fritz, on this record, has not created a dispute of material fact concerning the existence of at-risk assets, as required under California law and the district court did not err by following Shapero instead of MaGuire. Accordingly, we affirm the district court's summary judgment for Allstate on this claim.
 
 II
 
 20
 Fritz argues next that Allstate contracted with Wittorff and the estate to waive its policy limits, the contract evidenced by its conversations and letters with Wittorff's counsel, Phillip Watson. Fritz claims that Allstate's refusal to pay the underlying judgment in full is a bad faith denial of the existence of the contract. We conclude that the district court erred by entering summary judgment for Allstate on this claim.
 
 
 21
 * On November 14, 1989, Watson wrote to Allstate Claim Representative Debbie Beck, confirming an earlier telephone call with an Allstate representative:
 
 
 22
 Allstate is covering Linda Wittorff and Jean Clouette ... for any and all causes of action which may be brought against either or both of them as a result of the accident .... Any judgment as to the above will be completely covered by Allstate Insurance.
 
 
 23
 On December 12, 1989, Mr. Watson wrote counsel for Ms. Wittorff (furnished by Allstate):
 
 
 24
 Please be advised that we have been informed by Allstate that they are completely covering Linda Wittorff, her father, and her father's estate. Therefore, any and all judgments which may be entered under either or both will be fully satisfied by Allstate Insurance Company.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 ... Allstate made the decision that this matter was worth less than the available policy. Should that decision be in error, Allstate has agreed that they are responsible for the judgments.
 
 
 28
 Therefore, since Allstate has agreed that they will fully cover any judgments against Mrs. Wittorff, individually, her father, and her father's estate, as a result of the litigation brought herein, it is not necessary that we be present during this litigation.
 
 
 29
 The district court found that there were disputes of material fact on each element of Fritz's claim, except one: damages. According to the district court, Fritz's claim failed because the estate has suffered no economic loss; it had no assets exposed to the judgment, no damages claim to assign. We disagree on this latter point.
 
 
 30
 As the assignee of the estate and Wittorff, Fritz stands in the shoes of his assignors. Woolett v. American Employers Ins. Co., 143 Cal. Rptr. 799, 802 (Cal. Ct. App. 1978); Cal. Civ. Proc. Code Sec. 368. Consequently, for Fritz to prevail, his assignors must have a valid contract claim, including the element of damages. See Reichert v. General Ins. Co. of Am., 442 P.2d 377, 381 (Cal. 1968).
 
 
 31
 [T]he measure of damages for a breach of contract is the amount which will compensate the party aggrieved for all the detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result from it.
 
 
 32
 Communale v. Traders & Gen. Ins. Co., 328 P.2d 198, 202 (Cal. 1958) (citing Cal. Civ. Code Sec. 3300).
 
 
 33
 We look to the contract at the time of its formation. O'Connell v. Lampe, 274 P.2d 336, 337 (Cal. 1929). Taking all inferences in favor of the non-moving party, the district court, for the purposes of summary judgment, assumed that Allstate agreed that it would "fully cover any judgment" entered against Wittorff or the estate. At the time the agreement was made, Wittorff, herself, as well as the estate which she represented, were assumed to be in some jeopardy. They did not wish to expose themselves to a judgment in excess of the policy limits. Allstate, on the other hand, presumably thought any judgment could be brought in under the policy limits. Allstate agreed to assume the risk of the excess judgment in return for being relieved of any obligation to settle for the full policy limits. In this context, the potential damage was a judgment in excess of the policy limits against Clouette and a judgment against Wittorff in any amount, Wittorff not being individually an insured of Allstate. Viewed in the light most favorable to the non-moving party, there was consideration for the contract and there were potential damages from any judgment in excess of the policy limits or against the uninsured Wittorff. Because there are disputes of material fact as to each element, we reverse the district court's summary judgment for Allstate on this claim.
 
 B
 
 34
 We do not agree with Fritz's alternate theory that damages can be proved under Section 11580. Section 11580 permits third-party claimants to sue insurers directly. It states:
 
 
 35
 [T]he insolvency or bankruptcy of the insured will not release the insurer for the payment of damages sustained or loss occasioned during the life of such policy.
 
 
 36
 Cal. Ins. Code Sec. 11580(b)(1).
 
 
 37
 Allstate has satisfied its duties to Fritz under section 11580. Under section 11580, the policy terms, limitations, and conditions, in effect at the time of the loss, govern the insurer's duty to indemnify. See Zahn v. Canadian Indem. Co., 129 Cal. Rptr. 286, 288 (Cal. Ct. App. 1976). The statute requires Allstate to pay "up to the amount of indemnification specified in the policy" regardless of whether the insured's estate is insolvent. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1402 (9th Cir. 1986); see also Cal. Ins. Code Sec. 11580(b)(2) (limiting itself to actions "on the policy and subject to its terms and limitations."). Allstate fully complied with this requirement when it paid its $50,000 policy limit and provided a defense.
 
 CONCLUSION
 
 38
 We affirm the district court's summary judgment on Fritz's bad faith denial of a settlement offer but reverse the summary judgment on Fritz's claim for bad faith breach of contract.
 
 
 39
 AFFIRMED in part; REVERSED in part.
 
 
 40
 RYMER, Circuit Judge, concurring in part and dissenting in part:
 
 
 41
 I concur in all but part III A of the memorandum disposition, from which I dissent because under Shapero v. Allstate, 14 Cal. App. 3d 433, 439 (1971), I don't see how an already insolvent estate can show damage from an additional judgment being entered against it no matter what the cause of action is.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Assets would be at risk only if general creditors could reach Clouette's assets held in joint tenancy with right of survivorship. However, because Fritz has not raised the issue below or on appeal, we do not reach the question of whether an insurer exposes the insured's assets to risk where the insured's assets held in joint tenancy passed to the joint tenant upon the insured's death. This circumstance was not present in Shapero