286 F.2d 295
 Anna M. LEE, Administratrix of the Estate of Ernest Walter
Lee, Late of Harford County, deceased, Appellant,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, a Body Corporate, Appellee.
 No. 8155.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 11, 1960.
Decided Jan. 25, 1961.
 
 1
 Francis D. Murnaghan, Jr., and Melvin J. Sykes, Baltimore, Md., for appellant.
 
 
 2
 Norman P. Ramsey and M. King Hill, Jr., Baltimore, Md. (Paul E. Burke, Jr., and Smith, Somerville & Case, Baltimore, Md., on brief), for appellee.
 
 
 3
 Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and BRYAN, District Judge.
 
 
 4
 ALBERT V. BRYAN, District Judge.
 
 
 5
 The decision in review is this: that in Maryland the administratrix of an insured, who died in an accident within the coverage of his automobile liability policy, cannot recover for the insurer's negligent or bad faith refusal to settle, at a figure below the insurance limits, the claims of other persons in the accident based upon the insured's carelessness, if the assets of his estate are not sufficient to satisfy the amount by which the subsequent judgments on the claims exceeds the insurance.
 
 
 6
 Until the estate is out-of-pocket as a result of the insurer's refusal, reasoned the District Judge, the estate has suffered no pecuniary damage and, hence, has no cause of action. Both principle and precedent, his searching discussion reveals, can be advanced for this view. We disagree only because, in the absence of a ruling by the Maryland Court of Appeals, we believe the opposing position offers a sounder resolution of the issue in law and is demanded under the Maryland statutes on the administration of decedent estates. Indeed, the candid appraisal of the trial judge is that the current of today's authorities generally is to give a cause of action in the circumstances.
 
 
 7
 Had the insured survived, even insolvent, the outstanding judgments, as constant and life-long threats to his financial security and rating, would have caused him almost immeasurable damage. Certainly it would have rounded out his cause of action against the insurer for tort. Logically, his death ought not to relieve the insurer's situation-- it ought not to be a boon to the insurer-- just as it should not aggravate it. This is emphasized by the utter irrelevance of the death to the insurer's tort, which was committed by the insurer long after the insured's death, with absolutely no connection between the two. Likewise, full recompense of the judgment creditors for their personal injuries and loss is in no wise referable to the death of the culpable insured. The moneys they look to for satisfaction need not have devolved from the deceased; the funds may originate in the estate. In brief, the insurer's wrong was a wrong to the insured's estate, not to him. It is still a wrong despite his death, and it should be remediable at the suit of the estate.
 
 
 8
 The damage done to the estate is the creation of its liability for the judgments. Their holders are creditors equally with other persons with whom debts may have been incurred though not paid, such as medical and hospital expenses. The tort origin of the judgments does not change their character as estate debts. They are nonetheless damages though they represent no contribution to the insured or his estate. The rule of damages, nearly universal, that incurrence is equivalent to outlay, is not restricted to any particular category of obligation. Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262. It serves to perfect the cause of action here. Wessing v. American Indemnity Co., D.C.W.D.Mo.1955, 127 F.Supp. 775, post; Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dalrymple, 1959, 270 Ala. 119, 116 So.2d 924; Henke v. Iowa Home Mut. Cas. Co., 1959, 250 Iowa 1123, 97 N.W.2d 168; Southern Fire & Cas. Co. v. Norris, 35 Tenn.App. 6578 250 S.W.2d 785, certiorari denied Tenn. Supreme Court (1952); Schwartz v. Norwich Union Indemnity Co., 1933, 212 Wis. 593, 250 N.W. 446.
 
 
 9
 Again, the plaintiff-administratrix has been peculiarly damaged in Maryland by the insurer's tort. Her fiduciary duty, in which she is beholden as much to the creditors as to the next of kin, is to collect all that is owing the estate. 1 Sykes, Maryland Probate Law and Practice, sec. 591. For omission to prosecute the collection of any sum due the estate, in tort as well as contract, the administratrix would be personally liable. This is a personal liability and, against here alone, obviously it is not limited to the penalty of her official bond. Failure to sue on the insurer's tort could thus make her personally answerable in damages-- the element found wanting in the present case. Her responsibility in this respect would seem to dispel any concern lest under the view now advocated by the Court she, as judgment debtor, should become the arbiter of whether or not suit should be brought at all for the insurer's tort.
 
 
 10
 As the judgment now on appeal was rendered on motion to dismiss, the underlying events of the claim are admitted. Nationwide Mutual Insurance Company, the appellee, issued to Ernest Walter Lee, the plaintiff's husband, and to Gilbert C. Mabe motor vehicle liability policies upon on their respective automobiles. The insurer obligated itself to defend the insured or his estate against all claims within the risk of the insurance, and to pay any jdugment up to the face of the policy. But the insurer reserved the exclusive right and option to negotiate a settlement of any such claim.
 
 
 11
 While these policies were in effect, on January 5, 1956, the automobiles of the two insured were in collission on a Maryland highway. Lee and Mabe were killed, the latter's wife seriously injured. An action was begun againt the Mabe estate by the appellant, administratrix of the Lee estate, for the death of her husband. Similarly, actions were instituted against the appellant, on behalf of the widow and surviving children of Gilbert Mabe, for her injuries and for his suffering and death.
 
 
 12
 Before as well as during the consolidated trial of these cases in the Maryland State court, the insurer repeatedly declined opportunities to settle the Mabe claims against the appellant-administratrix for $16,000, her husband's policy being for $20,000. Final judgments went against her for a total of $135,125. Towards the satisfaction of the Mabe judgments Nationwide paid the amount due under the Lee policy.
 
 
 13
 Meanwhile, the appellant had filed her final accounting as adminstratrix. It showed total assets of $4,117.11 and, after expenses and other priority disbursements, a net estate of $1,441.48. This sum she distributed among herself and her three infant children, as the sole beneficiaries of the estate. The Mabe judgments were not entered until after this division. Formal demand was made by the jdgment holders upon the appellant, both as administratrix and in her own right, for the unpaid balance of the judgments. Upon their consent to withhold further insistence until she could prosecute her claim against Nationwide for damages, for its failure to settle the Mabe claims to the exoneration of her husband's estate, the appellant filed this action against Nationwide.
 
 
 14
 In the first count the administratrix charged Nationwide with negligence and bad faith in neglecting to effect a composition of the Mabe claims. In another count she asked for a judgment declaring: that the insurer had breached its duty to the Lee estate in respect to the settlement, that the overplus of the judgments was the direct consequence of the insurer's 'tortious conduct', and that Nationwide is bound to reimburse the Lee administratrix if in some way she can arrange to pay the judgments.
 
 
 15
 The District Court held that the complaint adequately states a case of negligence or bad faith. Besides finding that the tort is not actionable for want of damage to the plaintiff, it also held that the controversy was not one for a declaratory judgment. A declaration would be improper, the Court felt, as extending that procedure to 'completed torts'. It doubted, as well, the presence of the necessary jurisdictional amount, pointing out that the only moneys shown to be possibly available to the administratrix for payment on the judgments-- and thus damage to the estate-- were in the amount of $1,441.48, if and when that sum were restored by the distributees to the estate. As our rulings on the first count in effect make the desired declaration, we do not further consider the second count.
 
 
 16
 For his opinion that the liability alleged by the administratrix against the insurer was not actionable, the District Judge relied, primarily, upon the altogether acceptable thesis that an injury gives no cause of action without a showing of consequent loss. On this principle, he thought, actions for damages premised as here had been disallowed in the Maryland courts and by the Court of Appeals of this Circuit. But, in our opinion, these decisions do not go so far.
 
 
 17
 The first of them is United States Fidelity & Guaranty Co. v. Williams, 1925, 148 Md. 289, 129 A. 660. The point there was whether the injured creditor could collect his judgment, against the insured defendant, by an attachment thereon directed to the insurer. Obviously, it was a proceeding upon a policy, not an action for a tort, of the insurer. The remedy by attachment was denied. The insurance was held to be contract of indemnity against loss, rather than one to indemnify against a bare judgment of liability. Hence, it was effective only by way of reimbursement, expressly presupposing prior payment by the insured. This is quite different from the liability of a tortfeasor to pay for his wrong. The obligation of the policy was not attachable, the Court further ruled, for it did not consist of 'funds, property or credits' in the hands of the garnishee, the insurer, 'belonging to the debtor for which the latter would have the right to sue'.
 
 
 18
 This is the setting in which the Court stated that the insurer could not be held by the creditor 'for the reason that the appellant (insurer) is not indebted to Price (the insured) in the amount of the judgment unless and until Price has suffered loss by payment of the judgment.' Fundamentally, then, the decision went off on the form of remdy for enforcement of the insurer's contract liability. It does not decide that a judgment in tort is not in and of itself a pecuniary damage.
 
 
 19
 Nor does Richardson v. Boato, 1955, 207 Md. 301, 304, 114 A.2d 49, 51, cast the present case as one of injuria abseque damnum. The holding was simply that the tortious act and the injury must be causally connected before damages could be said to flow necessarily from the tortious conduct. The trial court was affirmed in its refusal to tell the jury, peremptorily, that upon proof of the unlawful conduct without more, damages must follow.
 
 
 20
 Last cited, in support of the judgment now before us, is State Automobile Mut. Ins. Co. of Columbus, Ohio v. York, 4 Cir., 1939, 104 F.2d 730, 734. Judge Parker there wrote that the evidence established neither negligence nor bad faith in the insurer's refusal to make a settlement. The fact was that the insured never had a case in tort against the insurer for the surplus of the injured party's judgment. Judge Parker's remark that the insured had not been damaged 'as he had not paid the judgment against him and testified that he never expected to pay it', was merely a comment upon the hollowness of the suit. This, by no means, was an enunciation of the doctrine now urged by Nationwide.
 
 
 21
 While these three cases do not in our mind dictate dismissal of the administratrix's claim, it must be acknowledged, as previously observed, that reputable precedent elsewhere does sustain the District Judge. Almost all the noteworthy decisions upon the point are included in his painstaking summation of the litigation in this field. For example: American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper, 5 Cir., 1932, 61 F.2d 446; Dotschay for Use and Benefit of Alfonso v. Nat. Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221; Norwood v. Travelers Ins. Co., 1939, 204 Minn. 595, 284 N.W. 785, 786, 131 A.L.R. 1496; Dumas v. Hartford Accident & Indemnity Co., 1942, 92 N.H. 140, 26 A.2d 361, 362; Boling v. New Amsterdam Casualty Co., 1935, 173 Okl. 160, 46 P.2d 916; and Universal Automobile Ins. Co. v. Culberson, 1935, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475, reversing on this point, Tex.Civ.App.1932, 54 S.W.2d 1061.
 
 
 22
 In some of these, undoubtedly, the absence of the satisfaction of the residue of the judgment was determinative-- 'The mere existence of an outstanding judgment, which may never be paid, is not legal injury'. In others the ruling came about in other ways, such as on the statute of limitations, the action being said not to accrue until the judgment is paid. However persuasive, we do not accept as governing here, he precept they teach.
 
 
 23
 More acceptable, as we noted at the outset, is the view treating the extant, unpaid judgments as injuries in themselves, their overburden measuring the pecuniary damages. For our conclusions we have borrowed somewhat freely from the impartial recount of the authorities made by the District Judge. We adopt for this case the summary of the law on this point as made by Justice Whittaker, then District Judge, in Wessing v. American Indemnity Co., D.C., 127 F.Supp. 775, 781, supra: '* * * It would be the clearest kind of error for a Missouri court to instruct a jury that they could not consider the element of damage consisting of medical, nursing and hospital expenses which had been incurred by the plaintiff but not paid. I think the analogy between that element of damage in a bodily injury suit, on the one hand, and the element of damage to the plaintiffs here, through suffering or 'incurring' this judgment, on the other hand, is so close as to be indistinguishable, and, I think, too, that payment is no more a condition precedent to suit for recovery of the damage in the one case than in the other.'
 
 
 24
 The judgment will be reversed and the case returned to the District Court for trial on the first count of the complaint, the other count remaining dismissed as unneeded.
 
 
 25
 Reversed and remanded.