Michael P. MAGUIRE, Adm'r of Estate of George M. Leggio, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 4290.

United States District Court,
D. Delaware.

April 19, 1972.

Rehearing Denied May 5, 1972.

William J. Wier, Jr., and Bertram S. Halberstadt, Wilmington, Del., for plaintiff.

Frank O'Donnell, Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge.

The question in litigation is whether plaintiff, Michael P. Maguire, Administrator of the Estate of George M. Leggio, (George) is entitled to recover from defendant, Allstate Insurance Company, the amount of a judgment of $868,000 rendered against plaintiff in a personal injury suit which had been defended by Allstate pursuant to its policy with George insuring him against personal liability. The matter is before the Court upon defendant's motion for summary judgment, the unverified complaint, unverified answer, affidavits, and answers to interrogatories. Jurisdiction exists by virtue of diversity of citizenship and the amount in controversy.

The following facts are undisputed:

On October 3, 1969, Samuel H. Leggio (Samuel) brought a suit in the Superior Court of Delaware against the present plaintiff for personal injuries which Samuel sustained as a result of an accident while riding in a car driven by George. Samuel recovered a judgment which, as reduced by stipulation, amounted to $868,000. At the time of the accident, George was insured by the defendant for a maximum of $25,000. The present motion seeks a dismissal of the action against defendant.

Count I alleges that Allstate was negligent in failing to conduct negotiations for settlement with reasonable skill and diligence and as a result the estate of George has been damaged in the amount of the unsatisfied judgment. Count II alleges that the defendant failed to act in good faith with regard to the interest of the estate of George in rejecting an offer made by Samuel on January 21, 1970 prior to trial to accept $25,000 in full settlement of his claim. In this connection, the complaint alleges that when Samuel made the offer defendant knew or should have known that the negligence of George had been the proximate cause of the accident and that a considerable risk existed that Samuel would obtain a substantial recovery against George's estate beyond the policy limits. Except for the fact that the settlement offer was made, the foregoing unverified allegations are denied by the unverified answer.

The following are additional undisputed facts:

The complaint which Samuel filed in the Superior Court against the Administrator of George's estate, plaintiff herein, alleged a number of acts of negligence by George which caused Samuel severe and permanent personal injuries, substantial medical expenses and loss of wages. George's administrator gave notice to Allstate of the institution of

the action. Allstate then took charge of the defense and of the negotiations for settlement and had the entire and exclusive control of both.

Shortly before September 18, 1969, Mr. John Babiarz, Jr., the attorney for Samuel, caused Michael P. Maguire to petition for the issuance of letters of administration upon the estate of George so as to provide Samuel with a defendant against whom suit could be brought. As a result letters of administration were issued to the present plaintiff. The petition for letters of administration recited that George had died intestate and was possessed of no personal property or real estate having any value.[1]

Sometime between October 17 and November 7, 1969, the attorney retained by Allstate to defend the Superior Court action reviewed the papers filed in the Register of Wills office which had been filed in connection with George's estate. These disclosed to him that George's estate possessed no personalty or realty having any value. On at least one occasion, date unspecified, the attorney for Allstate mentioned to an Allstate examiner that no letters of administration had been taken out by George's widow due to the fact that George had no assets to be probated.

On January 21, 1970, prior to the Superior Court trial, Samuel made a written offer of $25,000 to settle the suit, this being George's maximum coverage under his policy with Allstate. This offer by its terms expired on February 20, 1970. Allstate failed to accept the offer. On April 1, 1970 a representative of Allstate said that the company was unwilling to offer $25,000 to settle the action.

On April 24, 1970 at approximately 4:30 p. m. the attorney for Samuel was served with an Offer of Judgment pursuant to Superior Court Rule 68[2] in the amount of $25,000. On or before April 28, 1970, the attorney for Samuel refused to accept the $25,000 offer and informed counsel for Allstate that his demand was $1,000,000. The trial of the Superior Court action began on Monday, May 4, 1970 and was defended by Allstate's attorney. As stated a judgment, reduced by stipulation, of $868,000 was obtained against George's administrator, the plaintiff at bar.

There is no need to deal with other facts which appear of record. It is sufficient to note that they are such as to require a trial of the issue of defendant's alleged bad faith and negligence in handling the settlement negotiations and in refusing the offer of settlement unless the legal defense which defendant urges is sustained.

That defense is based upon the fact that before the Superior Court action began George had died and his estate was insolvent. Defendant argues that for these reasons, regardless of the alleged negligence and lack of good faith on its part in failing to compromise the Superior Court action, the estate of the insured, George, sustained no damage and for this reason the action should be dismissed.

The record fails to show that any of the $868,000 judgment has been satisfied. In view of Allstate's Offer of Judgment of $25,000 (unaccepted by plaintiff), it may be assumed for purposes of the present motion that Allstate is willing to satisfy the judgment to this extent. Accordingly, this opinion will be limited to a discussion of Allstate's liability for the excess judgment.

█ No facts are before the Court indicating where George's policy was issued. Presumably it was issued in Delaware since George lived here. All of the acts of defendant, whether of commission or omission, relating to negotiations looking toward a settlement of

---

1. The inventory of the estate attached to the Petition for letters of Administration shows amounts of $4.04 for all jointly owned goods and chattels, $10,700.00 appraised value of real estate with an outstanding mortgage thereon of $10,700.00 and $1,197.00 allowable expenses paid (funeral expenses).

2. This is like F.R.C.P. 68.

Samuel's claim occurred in Delaware. Delaware law is, therefore, controlling in construing the policy and in determining Allstate's obligations under it. No Delaware case, however, provides a guideline for the resolution of the problem posed by the motion.

The defense urged by defendant finds general support in Harris v. Standard Accident & Ins. Co., 297 F.2d 627 (2d Cir. 1961), cert. denied, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962) decided with one dissent under New York law; Bourget v. Government Employees Insurance Company, 456 F.2d 282 (2d Cir. Feb. 22, 1972), decided with one dissent under Connecticut law; Shapero v. Allstate Insurance Company, 14 Cal.App.3d 433, 92 Cal.Rptr. 244 (Ct. App.1971), decided under California law.

Other courts have reached a contrary conclusion. Lee v. Nationwide Mutual Ins. Co., 286 F.2d 295 (4th Cir. 1961) (net estate value $1,441.48—judgment $135,125.00) Sweeten, Administrator v. National Mutual Insurance Company, 233 Md. 52, 194 A.2d 817 (1963), both decided under Maryland law; Wolfberg, Administrator v. Prudence Mutual Casualty Company, 98 Ill.App.2d 190, 240 N.E.2d 176 (App.Ct.Ill.1968), decided under Illinois law. See also National Farmers Union Property & Casualty Co. v. O'Daniel, Adm'r, 329 F.2d 60 (9th Cir. 1964) decided under Montana law (estate value unspecified— judgment possibly exceeding estate assets by 100%). In *Sweeten*, the court noted that Harris v. Standard Accident & Ins. Co., *supra*, was severely criticized in 41 Texas Law Review 595 and 60 Michigan Law Review 517. In *Wolfberg*, the court stated that Harris v. Standard Accident & Ins. Co., *supra* and other decisions represented the earlier and minority view and that "[w]e are persuaded that the majority view [represented by Sweeten v. National Mutual Insurance Co., *supra*, Lee v. Nationwide Mut. Ins. Co., *supra*, and other cases] is the sounder one both in justice and logic."

In the instant case it is unnecessary to forecast which of these two lines of cases a Delaware court would follow, for the Allstate policy contains a provision, not discussed in any of the cited cases, which is dispositive of the motion.

Condition 4 of the Allstate policy entitled "Action Against Allstate" states in part (p. 16):

"Any person or organization or the legal representative thereof having secured such judgment or written agreement, shall be entitled to recover under this policy to the extent of the insurance afforded, but this policy shall not give any right to join Allstate in any action to determine the insured's liability, nor shall Allstate be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or his estate shall not relieve Allstate of any obligations."

The last sentence of Condition 4 constitutes a waiver by Allstate of the insolvency defense to the instant claim. Condition 4 applies to a claim by either "the insured or his estate" to enforce "any obligations" of the company.

One of the obligations of Allstate is found in Section I, Part 1, pertaining to automobile liability insurance. It states (p. 1):

"Allstate will defend any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient."

This is a typical provision. It imposes upon the company a duty to defend, but is permissive as to the authority of the company to settle a suit. Some of the early decisions seem to have assumed that under such a provision there was no duty to settle, but more recently it has been consistently held that the company does have such a duty. 67 Harvard Law Review 1136, 1138 (1954). When, as in the case at bar, an

**870**

insurance company takes charge of and assumes exclusive control of settlement negotiations its duty to use due care and proceed in good faith is clear. American Fidelity & Casualty Co. v. G. A. Nichols Co., 173 F.2d 830, 832 (10th Cir. 1949), Olympia Fields Country Club v. Bankers' Indemnity Insurance Co., 325 Ill.App. 649, 60 N.E. 2d 896, 901 (1945), American Mut. Liability Ins. Co. v. Cooper, 61 F.2d 446, 448 (5th Cir. 1932). In Brockstein v. Nationwide Mutual Insurance Company, 417 F.2d 703 (2d Cir. 1969), the court discussed the responsibility of an insurance company which, as in the case of Allstate, is given the permissive authority to negotiate such a settlement "as it deems expedient".[3] It said at 705:

> "While this broad statement appears to give the insurer unlimited settlement discretion, such is not the case—and for good reason. The policy confers upon the insurer the exclusive right to decide whether to settle or defend, but that decision may affect not only its own interest but also that of the insured. Since the insurer has that exclusive right, it must take responsibility for its exercise. While the insurer has an interest in paying out as little as possible on claims covered by its policies, the insured has an interest in not being exposed to a judgment beyond the policy limit. When these two interests conflict, the company has the unenviable duty of dealing fairly with them both. See Harris v. Standard Accident & Insurance Co., 191 F.Supp. 538, 540 (S.D. N.Y.), rev'd on other grounds, 297 F. 2d 627 (2d Cir. 1961), cert. denied, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962). Therefore, the insurer's power not to settle is actually more limited than the language of the policy indicates."

The obligations of Allstate referred to in Condition 4 are not limited to the maximum dollar amount which Allstate undertook to pay. This is made abundantly clear by a comparison between the comprehensive nature of the "any obligations" referred to in the Allstate insolvency provision and other portions of the policy. The sentence which precedes the insolvency provision authorizes a judgment creditor to sue on the policy but only "to the extent of the insurance afforded." The contrast between the limited right of a judgment creditor and the comprehensive rights of the insured or his estate under policy provisions not significantly different from those contained in Allstate's Condition 4 is discussed in 67 Harvard Law Review 1136, 1176, footnote 95 (1954). Other provisions in the Allstate policy likewise emphasize the fact that when Allstate intended to limit its liability to the dollar coverage of the policy it said so in explicit terms. See statements of "Limits of Allstate's Liability" on pages, 3, 5, 7, 10, 12 and 15 of the policy.

The breadth of the meaning of the language of Condition 4 is further illuminated by comparing it with a New York statute which prohibits the issuance of a policy unless it contains:

> "A provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and *within the coverage of such policy or contract.*" (emphasis supplied) 27 McKinney's Consolidated Laws of New York Annotated, c. 28, Insurance Law, § 167, subd. 1(a).

A provision required by the New York statute was included in the policy involved in Harris v. Standard Accident & Insurance Co., *supra.* There, in refer-

---

3. At page 705 the Court said:
   "The insurance policy provided that with respect to the revelant coverage, the insurer shall: 'defend any suit against the Insured alleging such injury * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.' "

ring to the statute, the court stated that although it prohibits an insurance company from using the insolvency of the insured as a defense, this applied only to a claim "to the face amount of the policy" that "it does not forbid such defense as to the excess judgment." 297 F.2d at 631. Unlike the New York statute and the policy issued under it in the *Harris* case, Condition 4 of the Allstate policy does not prohibit the insolvency defense only against claims for the face amount of the policy; it is more comprehensive and bars insolvency as a defense against "any obligations" of Allstate.

Whether an action for the breach of this obligation sounds in tort, Stilwell v. Parsons, 1 Storey 342, 145 A.2d 397 (Del.Sup.Ct.1958), Chittick v. State Farm Mutual Auto Insurance, 170 F. Supp. 276 (D.Del.1958) (the usual view, 67 Harvard Law Review, 1136, 1138, note 5), or is based upon a breach of an implied covenant of the policy requiring due care and good faith in negotiating a settlement, Wooten v. Central Mutual Insurance Co., 166 So.2d 747, 751 (Ct. of App.La.1964), Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 200–201 (Sup.Ct.Cal.1958), Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N.W. 257, 258 (1930), aff'd on rehearing, 204 Wis. 1, 235 N.W. 413 (1931), Smith v. Transit Casualty Co., 281 F.Supp. 661, 668 (E.D.Tex. 1968), Gray v. Nationwide Mut. Ins. Co., 422 Pa. 500, 223 A.2d 8 (1966), makes no difference. Even if the duty cannot be found in the four corners of the policy, it is one which flows from or arises out of the contractual relationship, Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So.2d 852 (1938), Olympia Fields Country Club v. Bankers' Indemnity Insurance Co., 325 Ill.App. 649, 60 N.W.2d 896 (1945). Wolfberg v. Prudence Mutual Casualty Co., 240 N.E.2d at 180, *supra,* and is included in the "obligations" referred to in Condition 4 of the policy.

Defendant argues that the reason for the insolvency provision in Condition 4 is to emphasize that Allstate's duty is to indemnify the insured against liability and not merely against loss from payments in discharge of the liability. Whether this was one of its purposes need not be determined for it had another. The defendant's concession [4] that the policy was one of indemnification against *liability* highlights the fact that if liability of the insured or his estate is established, Condition 4 means that the insolvency of neither shall serve to relieve Allstate of any of its obligations under the policy. One of these obligations is to use due care and proceed in good faith in attempting to effect a settlement after it has assumed exclusive control of settlement negotiations. On the record, a triable issue exists whether Allstate was delinquent in the performance of this duty and whether such failure resulted in the liability of the plaintiff established by the judgment against him.

The most that defendant's argument suggests is that the insurance provision is ambiguous. If this were so the ambiguity would have to be resolved against Allstate since it drafted the policy. Novellino v. Life Insurance Company of North America, 216 A.2d 420, 422 (Del.Sup.Ct.1966).

The fact that nine days before trial defendant tendered an Offer of Judgment for $25,000 purportedly under Superior Court Rule 68 does not conclusively establish that it carried out the settlement negotiations with due care and in good faith. It is at most evidence to be weighed at the trial by the fact finder with all other evidence pertinent to that issue.

Defendant's motion for summary judgment will be denied.

4. See paragraph 2 of the letter dated April 17, 1972 from defendant's counsel to the Court. Doc. No. 22.