Aureliano TORREZ, Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

No. 80–2318.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1982.

Joseph A. Sommer, Sommer, Lawler & Scheuer, Santa Fe, N.M., for defendant-appellant.

Matias A. Zamora, Santa Fe, N.M. (William E. Snead, Ortega & Snead, Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, DOYLE, Circuit Judge, and TEMPLAR,* Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

Ignacio Torrez was killed in an automobile accident September 9, 1973 in Otero County, New Mexico. At the time of his death he was a Mexican alien who had been returned from Denver by the immigration authorities about four days prior to his death. At the time of his death he was on his way back to Denver. His death occurred as a result of an accident which was caused by John R. Owens. The Owens car crossed the center line and collided with the automobile in which Torrez was a passenger. At the time of that accident Owens was insured by State Farm and had public liability insurance with State Farm for $15,-000. The Torrez estate (Torrez) brought suit against the administrator of Owens' state, David Sierra, in the district court of Santa Fe County, New Mexico, on a wrongful death action.

On March 24, 1975 the plaintiffs, by letter, offered to settle the case for $98,000, or the policy limits, whichever was the lesser amount, provided that the offer was accepted by 5:00 p.m. on March 28, 1975. The offer was not accepted by State Farm.

On May 10, 1975 Torrez obtained a judgment against Owens' estate for $150,000. Following that development, State Farm first offered to pay $15,000, the limit of the policy, together with costs in exchange for a release and discharge of the judgment. This offer was rejected by the Torrez estate.

At the request of the administrator of Owens' estate court approval was given for treating the judgment as a claim against Owens' estate. This was approved and Sierra assigned the right to the $15,000 policy, along with any claim Owens' estate had against State Farm for failing to settle the claim within the policy limits, to appellee Torrez.

The action that is here being considered was brought in the United States District Court for the District of New Mexico on the assigned claims against State Farm. By way of summary judgment, Torrez was granted $15,000 on the first count of his complaint, the amount of the insurance provided in the policy between Owens and State Farm. Following a jury trial a judgment of $135,000 was awarded to Torrez on the second count of his complaint. This was for State Farm's wrongful failure to settle the claim within the policy limits. Thus, Torrez, the assignee, obtained a judgment for the entire $150,000 against State Farm for the wrongful failure to settle the claim. It is that judgment that State Farm has appealed.

The contentions of State Farm are:

1. That the trial court was in error in refusing to direct a verdict in favor of State Farm on the basis of wrongful failure to settle within the policy limits cause of action.

2. That the trial court erred in instructing the jury as to the contents of New Mexico's Long-Arm Statute and explaining that this statute could expose Owens' estate in Colorado or elsewhere to liability for the wrongful death judgment.

3. That the trial court erred in refusing to dismiss the second count of Torrez' complaint in accordance with the contention of State Farm that the claim was not properly assigned from Owens' Administrator to Torrez.

4. That the second count that was based on the wrongful failure to settle the claim was barred by the New Mexico Statute of Limitations.

## I. WRONGFUL FAILURE TO SETTLE WITHIN POLICY LIMITS

State Farm maintains that the only amount that it can be called upon to pay is

---

* Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

$15,000, that is the amount for which it insured Owens. State Farm also contends that Torrez was not entitled to recover the $150,000 judgment. The argument is that an essential requirement for such a recovery is the existence of monetary loss to the estate of Owens. Accordingly, State Farm maintains that its refusal to settle the claim was not in bad faith because the estate of the insured had nothing to lose by a judgment in excess of the $15,000 policy. The governing law is that of New Mexico.

What is meant by bad faith? In the New Mexico case of *Lujan v. Gonzales,* 84 N.M. 229, 501 P.2d 673, 680 (App.Ct.1972) it was said:

> By bad faith we mean an absence of good faith by an insurer in its relations with its insured. *Tyler v. Grange Insurance Association,* 3 Wash.App. 167, 473 P.2d 193 (1970).
>
> What is good faith? We do not attempt to give a complete definition because of the variety of situations held to involve a question of good faith. See Annot. 40 A.L.R.2d 168, § 10 at 196, § 12 at 205, § 13 at 208, § 14 at 212, § 15 at 214, § 16 at 215 and § 17 at 216 (1955); 14 Couch on Insurance 2d, § 51:10, et seq. (1965). We use the term "good faith" in this case to mean an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration. *General Accident Fire & Life Assur. Corp. v. Little,* 103 Ariz. 435, 443 P.2d 690 (1968); see 40 A.L.R.2d, supra, § 5 at 181.
>
> In considering Allstate's liability for bad faith, we need not decide whether an insurer's duty to proceed in good faith with its insured is an implied covenant in the insurance contract or a tort. *See Comunale v. Traders & General Insurance Company,* 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958); *Landie v. Century Indemnity Company, supra* [390 S.W.2d 558 (Mo.App.1965)]. We do hold that such a duty exists. *Comunale,* supra; *Landie,* supra; 40 A.L.R.2d, supra, § 5 at 181. Also, the duty of good faith that is a concept separate from negligence, see 40 A.L.R.2d, *supra,* § 7 at 186,

and it is a concept separate from fraud, *see State Farm Mutual Automobile Ins. Co. v. White,* 248 Md. 324, 236 A.2d 269 (1967); *American Fidelity & Casualty Co. v. Greyhound Corp.,* 258 F.2d 709 (5th Cir.1958).

> To fulfill the duty of giving equal consideration to the interests of the insured and the insurer there must be a fair balancing of these interests. *American Fidelity & Cas. Co. v. L.C. Jones Trucking Co.,* 321 P.2d 685 (Okl.1957)....
>
> The question of Allstate's good faith is of importance in connection with Allstate's failure to attempt to settle the claim against Gonzales. If this failure was in bad faith, Allstate may be held liable for the judgment against Gonzales in excess of its policy limits *Foundation Reserve Insurance Company v. Kelly,* 388 F.2d 528 (10th Cir.1968); 14 Couch, *supra,* § 51:3.

Id.

 Good faith also means that the insurer has a duty to settle a claim if possible. This is sometimes said to be a result of the implied covenant of good faith and fair dealing which is part of the obligation of the insurer to the insured. Also included in the doctrine is the requirement that the insurer may be held liable for a judgment that is entered against the insured in excess of its policy limits where it (the insurer) had unreasonably refused to accept a settlement offer within the policy limits. *Commercial Union Assurance Co. v. Safeway Stores, Inc.,* 26 Cal.3d 912, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980). In *American Fidelity & Casualty Co. v. G.A. Nichols Co.,* 173 F.2d 830 (10th Cir.1949), an insurance company was found to be liable for an excess judgment of $22,360 after refusing to accept a settlement offer of $10,000, the policy limit (Oklahoma law applied).

In the light of our facts and the law which has been briefly mentioned is State Farm's refusal to settle the claim a result of bad faith?

*Foundation Reserve Insurance Co. v. Kelly,* 388 F.2d 528 (10th Cir.1968) is a New Mexico case which is in accord with the

general rule. There an opportunity to settle *after* the entry of judgment was present. The insurance company did not attempt to settle and this court held that where the undisputed facts of the case show the refusal of the appellant to settle, even after the judgment had been rendered against the insured; that bad faith existed as a matter of law; that an even greater duty rests on the company to settle after a *verdict* in excess of the policy limitations has been returned against the insured and an offer of settlement within the policy is made.

State Farm has alleged as a defense that there can be no bad faith when there is no proof that there were assets of the insured besides the liability policy which would be subjected to risk by State Farm's failure to settle.

State Farm's good faith argument is subject to question at the outset by a provision of the policy between State Farm and John R. Owens. Under "Conditions" it provides:

Any person or organization or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. *Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.* (emphasis added).

State Farm contends that this clause applies only to its obligation under the policy, which overall is limited to a payment of $15,000.

Appellee (Torrez) would have us interpret the clause as prohibiting the use of the insolvency defense against claims for the face amount of the policy, as well as a defense to any other obligations of State Farm. Therefore, the death and possible insolvency of Owens should not alter State Farm's obligations to its insured, or the insured's assignee, under the policy, because this does not detract at all from the alleged violation by the insurer of its duty to the policy holder. Thus, the insurer is not to view the financial condition of the insured and say, well, we do not owe any duty to defend the case or to pay the amount of the obligation under the policy for that matter, because the decedent has not demonstrated that he has money whereby he would have had to pay additional sums of money as a result of a violation of the insurance company's duty to the insured.

The instruction of the trial court to the jury rejected this theory. Instead, the jury was instructed on the issue of bad faith:

In this case plaintiff, as assignee of the rights of John R. Owens and his estate under the policy of liability insurance, seeks to recover the amount of the judgment rendered in the case of Torrez, Administrator, v. Sierra, Santa Fe County District Court No. 47853, which is in excess of the limits of the policy of liability insurance, on the grounds that defendant failed to act in good faith with regard to the interests of the estate of John R. Owens, deceased, insured under the said policy, because it failed to make a timely communication to the Administrator of the John R. Owens estate on an offer to settle within the policy limits; it failed to accept an offer to settle within the policy limits, and it failed to initiate or pursue meaningful negotiations toward the settlement of said lawsuit within the policy limits, even though the defendant knew or should have known that there was an unreasonable risk of judgment by the plaintiff in said action of Torrez v. Sierra in excess of the limits of said policy of liability insurance.

Virtually the only issue at the trial was whether the insurance company had been guilty of bad faith. The trial court also told the jury:

An insurance company which in bad faith refuses to settle or compromise within the policy limits is liable for the amount of the judgment even though it is in excess of the policy limit.

A further instruction which the court gave said:

> The insurer, in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much consideration as it does to its own interest when there is a great risk of recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits. A consideration of good faith of the insured's interest requires insurer to settle a claim. A refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing.

The trial court ruled that the final amount of damage should be $135,000 inasmuch as there was a judgment against the Owens estate for $150,000 and he had already entered a judgment for $15,000. Thus the jury was told to find that if the defendant was determined to have acted in bad faith in failing to settle for the $15,000 when it had a chance, that the damages were in effect liquidated and the balance in the amount of $135,000 should be returned. As we view it the only genuine issue presented on this appeal is whether bad faith existed *notwithstanding that the Owens estate had no funds.*

The issue in this case is then whether under New Mexico law the duty to settle exists in a case in which the claimant is an estate which has not been shown to have any assets other than the claim. The defendant Owens is dead and so the insolvent estate is the active party in the litigation. This was also true of Torrez. He died as a result of the accident and a wrongful death suit was brought on behalf of his estate by his father, the administrator.

There is somewhat of a division in the cases as to whether there can be a recovery against the insurance company by the estate growing out of the failure of the insurance company to settle the case within the limits of the policy where an opportunity to settle was present where the estate is devoid of assets. It is the factor of no assets which is here emphasized by State Farm as the decisive element in the case and so we address that aspect.

A judgment has been entered against the insurer in this case. State Farm's contention on appeal is that the rule exists to protect the economic position of the insured; that the lack of assets in the estate of the insured results in no economic prejudice and hence the insurer has no obligation to defend or do anything else.

The other side is that the duty of the insurer is not subject to the pecuniary condition of the insured; that the duty exists regardless of his money or estate.

■ Plaintiff-appellee relies on a fully reasoned decision of the United States District Court for the District of Delaware in *Maguire v. Allstate Insurance Company,* 341 F.Supp. 866 (1972). In that case the insurer had sought to dismiss the insured's estate action seeking recovery of amount of judgment which was rendered against insured and which had exceeded policy limits. The court held that where insured conceded that automobile policy having a maximum coverage of $25,000 was indemnification against liability and policy provided that, as does the policy in the case before us,[1] insolvency of insured's estate did not relieve insurer of its obligations, one of which was to use due care and proceed in good faith in attempting to effect settlement after it assumed exclusive control of settlement negotiations. The evidence showed insurer rejected an offer to settle the claim against the insured for $25,000 and that an $868,000 judgment was subsequently rendered against insured's estate. It was held that

---

1. The policy provision in *Maguire* is as follows: Any person or organization or the legal representative thereof having secured such judgment or written agreement, shall be entitled to recover under this policy to the extent of the insurance afforded, but this policy shall not give any right to join Allstate in any action to determine the insured's liability, nor shall the Allstate be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured or his estate shall not relieve the Allstate of any of its obligations.

this created issues of fact precluding grant of insurer's motion for summary judgment in action by estate against insurer. The estate of the insured was insolvent at the time of the litigation. Because of this the insurer maintained that regardless of the alleged negligence and lack of good faith on its part in failing to settle the case, the estate of the insured sustained no damage because it was insolvent. For this reason the action should be dismissed. The Delaware court said that the opinion would be limited to a discussion of Allstate's liability for the excess judgment granting that the insured was insolvent.

The only difference between the clause in *Maguire* and the similar clause at issue in this case is that the State Farm condition includes the words "obligations hereunder". It is conceivable, it could be argued, that this "obligations hereunder" means in accordance with this clause or condition only, not in accordance with its obligations under the policy. However, when one reads this in conjunction with the remainder of the paragraph, it is apparent that it was intended to mean all obligations under the policy itself because that is what is discussed in the clauses and statements above that sentence. The *Maguire* opinion cites the cases on both sides, saying that the position of the insurer was supported by *Harris v. Standard Accident and Insurance Company*, 297 F.2d 627 (2nd Cir.1961);[2] *Bourget v. Government Employees Insurance Co.*, 456 F.2d 282 (2nd Cir.1972), (decided under a Connecticut law); *Shapero v. Allstate Insurance Company*, 14 Cal.App.3d 433, 92 Cal.Rptr. 244 (Ct.App.1971), (decided under California law).

Some of the cases which support the position of the appellant, and which the *Ma-*

*guire* case applied which were opposite in their holdings to those just cited, are *Lee v. Nationwide Mutual Insurance Co.*, 286 F.2d 295 (4th Cir.1961) (net value of estate $1,441.48—judgment $135,125); *Sweeten, Administrator, v. National Mutual Insurance Company*, 233 Md. 52, 194 A.2d 817 (1963), both decided under Maryland law; *Wolfberg, Administrator v. Prudence Mutual Casualty Company*, 98 Ill.App.2d 190, 240 N.E.2d 176 (App.Ct.Ill.1968), decided under Illinois law; *National Farmers Union Property & Casualty Co. v. O'Daniel, Administrator*, 329 F.2d 60 (9th Cir.1964), decided under Montana law (estate value unspecified—judgment possibly exceeded estate assets by 100%).

■ The *Sweeten* opinion noted that *Harris v. Standard Accident Company* had been severely criticized in 41 Texas Law Review 595 and 60 Michigan Law Review 517.

In *Wolfberg*, the Illinois court stated that *Harris v. Standard Accident Insurance Co.*, supra, and its progeny represented the earlier and minority view and that the majority view represented by *Sweeten v. National Mutual Insurance Co.*, supra, *Lee v. Nationwide Mutual Insurance Company*, supra, and other cases was the sounder one both in justice and logic.

*Lee v. Nationwide Mutual Insurance Co.*, 286 F.2d 295 (4th Cir.1961) is factually similar to our case. Judge Albert V. Bryan wrote the opinion for the panel which included Chief Judge Sobeloff and Judge Boreman. The applicable law was that of Maryland. The insured had died in an accident within the coverage of his automobile liability policy. The trial court ruled that there could *not* be a recovery for the insur-

---

**2.** The *Harris* case has been seriously undermined by the later Second Circuit decision in *Young v. American Casualty Co.*, 416 F.2d 906 (1969). In that case the insured had taken bankruptcy as of the date of the decision. However, the bankruptcy did not exist at the time that the case could have been settled. It was held that the bad faith of the insurer was provable because of its failure to even try to settle. The fact of the bankruptcy of the insured did not prevent recovery of the entire

judgment entered for the insured since the insured suffered bankruptcy as a result of the judgment in excess of the policy limits, although *Harris* is distinguished on the ground that the bankruptcy had existed after the time of the excess judgment, nevertheless the court said that the bankruptcy trustee could recover the excess amount and could reimburse the injured plaintiffs. Thus it is not far removed from the facts in this case.

er's negligence or bad faith refusal to settle at a figure below the insurance limits. It said:

> An insured, who died in an accident within the coverage of his automobile liability policy, cannot recover for the insurer's bad faith refusal to settle, at a figure below the insurance limits, the claims of other persons in the accident based upon the insured's carelessness, if the assets of his estate are not sufficient to satisfy the amount by which the subsequent judgments on the claims exceeded the insurance.

> Until the estate is out of pocket as a result of the insurer's refusal, reasoned the district judge, the estate has suffered no pecuniary damage and, hence, has no cause of action. *Id.* at 295.

The appellate panel disagreed with that, saying:

> Both principle and precedent, his searching discussion reveals, can be advanced for this view. We disagree only because, in the absence of a ruling by the Maryland Court of Appeals, we believe the opposing position offers a sounder resolution of the issue in law and is demanded under the Maryland statutes on the administration of decedent estates. Indeed, the candid appraisal of the trial judge is that the current of today's authorities generally is to give a cause of action in the circumstances. *Id.*

The court reasoned:

> Had the insured survived, even insolvent, the outstanding judgments, as constant life-long threats to his financial security and rating, would have caused him almost immeasurable damage. Certainly it would have rounded out his cause of action against the insurer for tort. Logically, his death ought not to relieve the insurer's situation—*it ought not to be a boon to the insurer*—just as it should not aggravate it. This is emphasized by the utter irrelevance of the death to the insurer's tort, which was committed by the insurer long after the insured's death, with absolutely no connection between the two. (Emphasis supplied). *Id.* at 295–296.

The court went on to say that there was absolutely no connection between the death and the action by the insured:

> Likewise, full recompense of the judgment creditors for their personal injuries and loss is in no wise referable to the death of the culpable insured. The moneys they look to for satisfaction need not have devolved from the deceased; the funds may originate in the estate. In brief, the insurer's wrong was a wrong to the insured's estate, not to him. It is still a wrong despite his death, and it should be remediable at the suit of the estate. *Id.* at 296.

> Again, the plaintiff-administratrix has been peculiarly damaged in Maryland by the insurer's tort. Her fiduciary duty, in which she is beholden as much to the creditors as to the next of kin, is to collect all that is owing the estate. *Id.*

Finally the court reasoned that:

> The failure of the administratrix to sue on the insurer's tort could make her personally answerable in damages.... The judgment of the administratrix should be the answer as to whether the suit is valid. *Id.*

The insurer in *Lee* had:

> repeatedly declined opportunities to settle the Mabe claims against the appellant-administratrix for $16,000, her husband's policy being for $20,000. Final judgments went against her for a total of $135,125. Towards the satisfaction of the Mabe judgments Nationwide paid the amount due under the Lee policy. *Id.* at 296–297.

The facts in the numerous cases are not unlike our fact situation. The instant case is not a situation in which the estate of Owens, the tort feasor, is going to benefit. Rather it is a case in which a bona fide judgment has been entered against the estate of the wrongdoer in the accident. It is decedent's family who will benefit from the recovery. It is pointed out in *Lee* that an actual indebtedness is not necessary. But in the case at bar there is an indebtedness. The estate of the decedent tort feasor

transferred its rights to the plaintiff in this case and plaintiff proceeded to get a judgment in a lengthy and difficult lawsuit.

*Wolfberg v. Prudence Mutual Casualty Co.,* 98 Ill.App.2d 190, 240 N.E.2d 176 (Ill. 1968) like this case, involved an estate, the tort feasor in the automobile accident having been killed. The claim was settled and claimants offered to accept the balance payable under the policy in settlement of their claims. The insurer refused. A jury trial was held and verdicts totalling $55,500 were returned and judgments were entered. It was then that the insurer deposited $17,500 with the clerk of the court. This represented the balance provided by the policy. But this did not satisfy the judgment. The excess amounted to some $38,000. The amount was sought by the administrator in a suit against the insurer. Negligence of the insurer in failing to negotiate and compromise the suit for $17,500, the limit of the policy, which amount had been offered, was the basis. The insurer moved to dismiss and that was granted and this judgment was appealed to the intermediate appellate court in Illinois. That court said:

> That an insurance company may so conduct itself as to be liable for an entire judgment recovered against its insured irrespective of its policy limits is well settled in this state, citing a number of cases.
>
> "fraud, negligence or bad faith may render the insurer liable."

The court concluded:

> We find no decided cases in Illinois as to whether, in its conditions precedent to such a recovery, it must be alleged in the complaint and borne out by actual proof that there had been payment of the excess judgment by the insured or his estate, or ability to pay the same.

The authorities in other jurisdictions seem to be in disagreement on this issue. *Harris v. Standard Accident and Insurance Company,* 297 F.2d 627 (2nd Cir.1961) is cited as one of these. The court said:

> a review of the authorities persuades us to the view that the cases relied on by appellee constitute the earlier and minority view on this issue. 240 N.E.2d at 179.

These cases were considered in *Wooten v. Central Mutual Insurance Company,* 182 So.2d 146 (La.App.1966), where it was noted that these cases were not persuasive, had been severely criticized and were expressly refuted or failed to be followed in their federal circuits. *Id.*

The majority view in this country is represented by *Jenkins v. General Accident Fire and Life Assurance Corp.,* 349 Mass. 699, 212 N.E.2d 464, 465, 467 (1965).

> Contrary to some conflicts in the earlier cases that it is unnecessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for a breach of its duty to act in good faith, no different rule results should prevail whether plaintiff is a living person or the representative of a deceased insured's estate. *Id.*

> Thus, the proposition that the assets of the estate or the lack of assets were relevant or material has been specifically rejected in *Sweeten v. National Mutual Insurance Co.,* 233 Md. 52, 194 A.2d 817 (where a decedent's estate had no assets.) *Id.* 240 N.E.2d at 180.

The court cited:

> *Lee v. Nationwide Mutual Insurance Co.,* 286 F.2d 295 (insufficient assets); *Henke v. Iowa Home Mutual Casualty Co.,* [250 Iowa 1123] 97 N.W.2d 168; and *Chitty v. State Farm Mutual Automobile Insurance Co.,* 38 F.R.D. 37 [(E.D.S.C.1965)] (apparently no assets). *Id.* 240 N.E.2d at 180.

> We are persuaded that the majority view is the sounder one both in justice and logic. The very fact of the entry of judgment itself constitutes damage and harm sufficient to permit recovery. The damage to the estate is the creation of liability for the judgments. The rule of damages is that an incurrence is equivalent to outlay. The insured would have had an action though insolvent. His death is no just reason to give a boon to the insurer. *Id.*

In the present case the loss to the estate of the person killed, Torrez, has been reduced to a final judgment. So there is not threat of unjust enrichment as a result of the death of the insured, Owens. Where, as here, the decedent tort feasor had no funds, the insurer who failed to settle should not be allowed to successfully assert that it is not liable despite its breach of duty because the decedent tort feasor was without funds. Such a rule would encourage the insurer to avoid its duty in many cases. It would balance the risk in every case knowing that it had an escape hatch. Refusal to settle within the policy limits would be the rule.

Such a course would impair the use of insurance for a poor man. The fullness or the emptiness of an insured's purse should be irrelevant. It is a poor measure of liability by the insurer under its contract.

Finally the annotation reported in 63 ALR 3rd 627, starting at page 642 in which there are numerous state cases cited considers all aspects of this issue. Discussion is continued on page 644, 645, 646 and 647. From a reading of this it would appear that the majority rule is well accepted. Also the underlying policy reasons for the doctrine appear to be avoidance of the giving of an out to the insurance carrier whereby it can weigh the alternatives in a situation such as that presented here and in the cases cited and can with impunity decide to take the risk of not settling where, as here, the parties are poor. Thus the underlying policy is to enforce the obligations of the insurer to act prudently regardless of whether the insured was insolvent.

Chief Judge Bratton, the trial judge, is presumed to know the law present and future in New Mexico. Judge Bratton submitted the case to the jury as indicated above on the theory which allows the jury to determine the issue of bad faith of the insurance company. The trial court also took the position that the insolvency of the estate of the insured was irrelevant.

The trial court in a diversity case is in a better position to predict the substantive law of his or her state than we are.

## SUPPLEMENTAL POINTS

### 1. *The Long-arm Statute.*

State Farm attempts to avoid the problem of failing to prove insolvency by arguing that the judgment rendered against Owens in the New Mexico state court was *in rem* not *in personam,* and since no personal service was made on any administrator outside of New Mexico, even if Owens had assets outside of New Mexico, no other state would give full faith and credit to the amount in excess of the policy limits. State Farm therefore argues that it was not improper to initially refuse to settle the claim. We disagree. The response to the argument is that the Uniform Probate Code, as adopted in New Mexico and Colorado, allows enforcement of the wrongful death judgment in other jurisdictions. § 45–3–815 N.M.S.A.1978 Comp. C.R.S. 1973, § 15–12–815(1) reads:

> All assets of estates being administered in this state are subject to all claims, allowances, and charges existing or established against the personal representative wherever appointed.

Therefore, any assets which Owens had in Colorado would have been in jeopardy, putting Owens' estate at risk to a greater extent than the State Farm policy limit. The wrongful death suit in New Mexico was *in personam* because Owens' Administrator in New Mexico was personally served. In any event, it was a personal lawsuit by the Administrator of the Torrez estate against the Administrator of the Owens estate and a personal judgment was granted following a jury trial.

State Farm also argues that the jury was confused by the court's reading of the Long-arm Statute to them in response to a jury question from the foreman as to the potential exposure of Owens' Colorado estate from the wrongful death statute. There was a lack of proof in the wrongful death trial or the trial of this case that Owens had any Colorado assets. The introduction of the statute, argues State Farm, was error because a judgment obtained pursuant to a long-arm statute does not determine its enforceability in another state.

The jury subsequently asked if there was a possibility of a danger to the estate of Owens in states other than New Mexico and the court responded to that:

Yes, there could be a danger to the estate of Owens in other states from an excess judgment over the policy in New Mexico.... Now you've had before you, in essence, that issue. The claim of the plaintiff is that the defendant company was in bad faith in not negotiating a settlement (within the policy limits).

The company has come in as one of its grounds of saying it was not in bad faith, by saying that in its view it did not think there was a possibility of danger to the estate of Owens in other states.

Now, the issue in connection with the plaintiff's claim of bad faith and the defendant's denial of bad faith is whether or not the defendant, kind of putting it on the other foot, whether its actions were guided by a good faith and reasonable belief of its position, that is, whether or not if it did believe, as there has been testimony here, that there was no danger to the Owens estate elsewhere, whether such a belief was in good faith and reasonable on the part of the company.

The foregoing explanation by the court ought to have eliminated any confusion by the jury as to the issues in this case. The issue of potential exposure which could occur because of the long-arm statute had a direct bearing on whether State Farm acted reasonably or in bad faith and certainly was a correct statement of the law. The conclusiveness of the liability of Owens' estate elsewhere was not an issue. The risk of liability would be sufficient to create a duty on the part of State Farm to make a good faith effort to settle the claim. Indeed, as we have indicated above, regardless of whether the estate had any additional assets, the insurance company had an obligation to look out for the interests of its insured and it had to exercise good faith. It is fundamental that an insurance company should settle a case within the policy limits if it was able to do so. This requirement that the company exercise good faith in dealing with the rights of the insured is not dependent upon the insured owning property. We have taken the position above that even though the insured is without assets, the duty still exists.

2. *The Assignment of the Claim.*

■ Appellant contends that the court order which allowed Owens' Administrator to assign the estate's claim against State Farm for wrongful failure to settle, was invalid because under a previous court order Owens' Administrator was directed to send a copy of any application to State Farm's attorney for approval. The attorney did not receive such notice. Undoubtedly, however, State Farm became aware of it at an early time. It doesn't plead that it was prejudiced.

3. *Statute of Limitations.*

■ Apparently the applicable statute of limitations is § 37–1–4 N.M.S.A.1978. The statute bars suits involving a tort or unwritten contract brought more than four (4) years after the cause of action accrues. Appellant contends that the action is barred because all of the conduct complained of on the part of State Farm was heard before May 10, 1975, the date on which the verdict was returned. The complaint was filed on May 9, 1979, thus more than four years had elapsed between the wrongful conduct and the institution of this lawsuit.

However, the cause of action for bad faith by State Farm did not accrue until the judgment was final on October 8, 1976. Only then could Owens' right against State Farm for exposing the estate to excess liability be perfected and assigned. It was only then that the excess liability was established. *See Ginn v. State Farm Mutual Automobile Insurance Company,* 417 F.2d 119, 122 (5th Cir.1969).

4. *Illegal Activity.*

■ The final point argued by appellant alleges a defense of illegality. Since Ignacio Torrez was an illegal alien who was in the process of being transported back to Denver at the time of his death, in violation of 8 U.S.C. §§ 1325 and 1326, enforcement of this judgment in his favor would be rewarding him for violating the law, argues

State Farm. There is no indication that such a judgment would be contrary to United States public policy. In New Mexico, as well as other jurisdictions, wrongful death statutes allow a claim to be made on behalf of an illegal alien. *Torres v. Sierra,* 89 N.M. 441, 553 P.2d 721 (1976).

The judgment of the district court should be and is hereby affirmed.